**No. 24-50127**

# In the United States Court of Appeals
# for the Fifth Circuit

JERRY MERRITT,

*Plaintiff – Appellant/Cross–Appellee*,

*v.*

TEXAS FARM BUREAU; TEXAS FARM BUREAU BUSINESS CORPORATION; TEXAS FARM BUREAU CASUALTY INSURANCE COMPANY; TEXAS FARM BUREAU MUTUAL INSURANCE COMPANY; TEXAS FARM BUREAU UNDERWRITERS; FARM BUREAU COUNTY MUTUAL INSURANCE COMPANY OF TEXAS; SOUTHERN FARM BUREAU LIFE INSURANCE COMPANY,

*Defendants – Appellees/Cross Appellants.*

_____

On Appeal from the United States District Court for the
Western District of Texas
Case No. 6:19-CV-679

_____

**BRIEF OF PLAINTIFF – APPELLANT/CROSS – APPELLEE**

_____

AVI MOSHENBERG
Texas Bar No. 24083532
avi.moshenberg@lmbusinesslaw.com
LAWSON & MOSHENBERG PLLC
801 Travis Street, Suite 2101 #838
Houston, Texas 77002
(713) 449-9644
*Counsel for Plaintiff – Appellant/
Cross – Appellee*

i

CERTIFICATE OF INTERESTED PERSONS

Case No. 24-50127, *Jerry Merritt v. Texas Farm Bureau, et al.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Plaintiff – Appellant/Cross-Appellee:**
Jerry Merritt

**Counsel for Plaintiff – Appellant/Cross-Appellee:**
Avi Moshenberg
Nicholas Lawson
Lawson & Moshenberg PLLC

William Thomas
McDowell Hetherington LLP

Kelly E. Cook
Wyly & Cook PLLC

Sean McCarthy
Brian Abramson
Williams Hart Boundas, LLP

**Defendants – Appellees/Cross-Appellants:**
     Texas Farm Bureau
     Texas Farm Bureau Business Corporation
     Texas Farm Bureau Casualty Insurance Company
     Texas Farm Bureau Mutual Insurance Company
     Texas Farm Bureau Underwriters
     Farm Bureau County Mutual Insurance Company of Texas
     Southern Farm Bureau Life Insurance Company

**Counsel for Defendant – Appellee/Cross-Appellant Southern Farm Bureau Life Insurance Company:**
     Markham R. Leventhal
     Irma Reboso Solares
     Stephanie A. Fichera
     Carlton Fields, P.A.

**Counsel for All Other Defendants – Appellees/Cross-Appellants:**
     Barry A. Moscowitz
     Leslie W. Richardson
     Cassie J. Dallas
     Thompson, Coe, Cousins, & Irons, L.L.P.

By:  */s/ Avi Moshenberg*
      Avi Moshenberg
      Attorney of Record for Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff, Appellant/Cross-Appellee, Jerry Merritt respectfully requests oral argument. Given the complexities of this case, oral argument will aid the Court in reaching its decision.

## TABLE OF CONTENTS

Certificate of Interested Persons .................................................................. ii

Statement Regarding Oral Argument........................................................... iv

Table of Authorities ................................................................................... viii

Jurisdictional Statement .............................................................................. 1

Issues Presented........................................................................................... 2

Statement of the Case................................................................................... 3

1. Farm Bureau runs its insurance-sales operation through a pyramid structure. ................................................................................................. 4

2. Farm Bureau classifies all agents and Agency Managers as independent contractors without any legal basis. ....................................................... 5

3. Farm Bureau's insurance agents primarily solicit new customers and service policyholders out for their assigned insurance agencies. ............. 6

4. Farm Bureau's Agency Managers primarily manage their assigned insurance agencies.................................................................................. 8

5. Farm Bureau's Sales Department manages the agents and Agency Managers. ............................................................................................... 13

6. Merritt sues under the FLSA to recover the overtime pay he was denied because Farm Bureau misclassified him as a contractor.........................15

7. The trial court holds on summary judgment that Merritt was a nonexempt FLSA employee who worked at least 816 hours of overtime. ................................................................................................ 16

8. The court holds a trial over whether Farm Bureau had actual or constructive knowledge of Merritt's overtime, in which the jury found it did not................................................................................................ 18

9. The trial court denies Merritt's Rule 50(b) and 59 motions................... 21

Summary of the Argument......................................................................... 22

Arguments & Authorities ......................................................... 25

1. Farm Bureau violated the FLSA by "employing" Merritt to work overtime without compensation. ....................................................... 25

    A.   Farm Bureau "employed" Merritt under the FLSA because it suffered or permitted him to work overtime, which is all the FLSA requires. ..................................................... 27

    B.   Farm Bureau "employed" Merritt under the FLSA because it had constructive knowledge of his work time. ................................... 35

        (1)  Farm Bureau's record-keeping violation establishes that it had constructive knowledge.......................................... 36

        (2)  Farm Bureau had constructive knowledge of Merritt's work because it knew he was working off the clock. .......................40

        (3)  The trial court erred by imposing a duty on Merritt to notify Farm Bureau he was working overtime. ............................... 47

            a. Employees have a duty to comply with their employer's record-keeping system. ..................................... 47

            b. Employees do not have a general common-law duty to request or report overtime absent a timekeeping procedure. ..................................................... 52

            c. Farm Bureau lacked a timekeeping system and so Merritt had no duty to report overtime. ....................... 55

            d. The jury charge improperly instructed the jury that Merritt owed a duty to notify his employer of overtime. ............... 57

2. Under the FLSA, Merritt is entitled to overtime pay of "not less than one and one-half times" his regular rate of pay. ...........................................60

Conclusion ................................................................................. 67

Certificate of Service ................................................................. 68

Certificate of Compliance .......................................................... 69

## TABLE OF AUTHORITIES

### Cases

*Allen v. City of Chicago*, 865 F.3d 936 (7th Cir. 2017) ............................. 51

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) .................... 44

*Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438 (2002) ................. 63, 64

*Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981) ..... 54

*Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825 (5th Cir. 1973) .................................................................................... passim

*Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324 (5th Cir. 1972) .......... 55

*Castillo v. Givens*, 704 F.2d 181 (5th Cir. 1983) .................................... 38

*Clyde v. My Buddy Plumber Heating & Air, LLC*, No. 219CV00756JNPCMR, 2021 WL 778533 (D. Utah Mar. 1, 2021) .... .................................................................................................. 66, 67

*Dacar v. Saybolt, L.P.*, 914 F.3d 917 (5th Cir. 2018) .............................. 61

*Davis v. Food Lion*, 792 F.2d 1274, 1277 (4th Cir. 1986) ............ 43, 47, 48

*Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959 (5th Cir. 2016) 33

*Ferguson v. Tex. Farm Bureau Bus. Corp.*, No. 6:17-CV-00111, 2017 WL 7053927 (W.D. Tex. July 26, 2017) .......................................... 45, 46

*Ferguson v. Tex. Farm Bureau Bus. Corp.*, No. 6:17-CV-111-RP, 2018 WL 1392703 (W.D. Tex. Mar. 20, 2018) .......................................... 45

*Ferguson v. Texas Farm Bureau Bus. Corp.*, No. 6:17-CV-111-RP, 2018 WL 1392704 (W.D. Tex. Mar. 20, 2018) .......................................... 15

*Flores v. FS Blinds, L.L.C.*, 73 F.4th 356 (5th Cir. 2023) ................. 38, 39

*Forrester v. Roth's I. G. A. Foodliner, Inc.*, 646 F.2d 413 (9th Cir. 1981) ...................................................................... 48, 49, 50, 51

*Fox v. Summit King Mines*, 143 F.2d 926 (9th Cir. 1944) ............... 48, 49

*Goldberg v. Cockrell,* 303 F.2d 811 (5th Cir.1962) ..................... 38, 39, 41

*Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508 (5th Cir. 1969) .... 37, 38, 49

*Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428 (5th Cir. 2005) .. 33

*Hobbs v. EVO Inc.*, 7 F.4th 241 (5th Cir. 2021) ................................ 38, 39

*Hopkins v. Cornerstone Am.*, 545 F.3d 338 (5th Cir. 2008) ............... 6, 54

*L. Ctr. v. United States Dep't of Lab.*, 120 F.4th 163 (5th Cir. 2024)..... 27

*Lenroot v. Interstate Bakeries Corp.*, 146 F.2d 325 (8th Cir. 1945)........ 37

*Loy v. Rehab Synergies, L.L.C.*, 71 F.4th 329 (5th Cir. 2023) .......... 37, 39

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988) ......................... 38

*Mitchell v. Raines*, 238 F.2d 186 (5th Cir. 1956) .................................... 40

*Newton v. City of Henderson*, 47 F.3d 746 (5th Cir. 1995)...............passim

*Patriot Erectors, L.L.C.*, 2024 WL 3181455 (quoting 29 C.F.R. § 785.13) ............................................................................ 31, 42, 43

*Perry v. City of New York*, 78 F.4th 502 (2d Cir. 2023) ............................ 51

*Portillo v. Permanent Workers, L.L.C.*, 793 Fed. Appx. 255 (5th Cir. 2019), *revised* (Nov. 12, 2019)......................................................... 55

*Raczkowski v. TC Const. Co., Inc.*, 8 F.3d 29, 1993 WL 385483 (9th Cir. 1993) ................................................................................................ 44

ix

*Roberto v. Dep't of Navy*, 440 F.3d 1341 (Fed. Cir. 2006) ...................... 63

*Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997) ......................................... 63

*Schwind v. EW & Associates, Inc.*, 371 F. Supp. 2d 560 (S.D.N.Y. 2005) ........................................... 66, 67

*Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290 (1985) .... 54

*United States Dep't of Labor v. Five Star Automatic Fire Prot.*, 987 F.3d 436, 444 (5th Cir. 2021) ................................................... 42

*Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 F. App'x 448 (5th Cir. 2009) ................................................ 33, 52, 53

*White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869 (6th Cir. 2012) ........................................... 52

*White v. Patriot Erectors, L.L.C.*, No. 23-50524, 2024 WL 3181455 (5th Cir. June 26, 2024) ......................................... 26

*Wirtz v. Bledsoe*, 365 F.2d 277, 278 (10th Cir. 1966) ............................. 44

*Wronke v. Marsh,* 787 F.2d 1569 (Fed. Cir. 1986) .................................. 64

## Statutes

28 U.S.C. § 1291 ................................................................................. 1

28 U.S.C. § 1331 ................................................................................. 1

## Regulations

29 C.F.R. § 778 ................................................................................. 60

29 C.F.R. § 778.107 .......................................................................... 60

29 C.F.R. § 778.109 .......................................................................... 61

29 C.F.R. § 778.111 ........................................................... 61, 62

29 C.F.R. § 778.112 ........................................................... 61, 62

29 C.F.R. § 778.113 ................................................................ 61

29 C.F.R. § 778.114 ........................................................... 61, 62

29 C.F.R. § 778.117 ........................................................... 61, 62

29 C.F.R. § 778.118 ....................................................... 62, 63, 64

29 C.F.R. § 778.119 ..........................................................passim

29 C.F.R. § 778.120 ..........................................................passim

29 U.S.C. § 203(g) ............................................................... 27

29 U.S.C. § 207(a)(1) ............................................................ 26

29 U.S.C. § 211(c) ........................................................... 38, 41

29 U.S.C. § 215(a)(5) ...........................................................38

**Other Authorities**

*Merriam-Webster*, https://www.merriam-webster.com/dictionary/ ........39

## JURISDICTIONAL STATEMENT

The district court exercised federal-question jurisdiction because the claims at issue here involve the federal Fair Labor Standards Act. *See* 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291 because the final judgment disposes of all parties' claims, and Merritt filed a timely notice of appeal.

# ISSUES PRESENTED

## *Issue 1—whether Merritt was employed under the FLSA*

A. Under the FLSA, "employ" includes to suffer or permit to work. Farm Bureau gave Jerry Merritt a blank check to work as much as he wanted. It had no policies limiting how much time he could work, and it did not prevent him from working over 40 hours in a week. Did Farm Bureau employ Merritt for all his time working because it permitted all of it?

B. An employer has constructive knowledge of an employee's hours worked if it should have known about those hours. The FLSA requires employers to record their employees' hours worked. Farm Bureau admits it could have recorded Merritt's time, if it wished. But it made no effort to track his time and knew his work time was not being recorded. Did Farm Bureau have constructive knowledge of Merritt's hours worked?

C. An employee has a duty to comply with his employer's reasonable procedures for reporting overtime. Farm Bureau did not have any procedures for reporting or tracking time. Did the trial court err in imposing on Merritt a general common-law duty to affirmatively give notice of overtime absent any overtime-reporting policy?

## *Issue 2—whether Merritt was entitled to a 1.5x multiplier to calculate his unpaid overtime*

A. Generally overtime pay is 1.5x the worker's regular rate. For certain specific scenarios, like weekly commissions or deferred commissions, the rate is only .5x the regular rate. Merritt's commissions were not paid weekly and were not deferred. Did the trial court err in applying the special-circumstances regulations instead of the general 1.5x rule?

2

## STATEMENT OF THE CASE

This is a Fair Labor Standards Act case for an individual who was employed by Farm Bureau[1] to manage a team of agents and to solicit applications for insurance.[2] Farm Bureau classified its Agency Managers like Merritt as independent contractors and paid them on a commission-only basis.[3] During the suit, the parties filed numerous motions for summary judgment. The trial court's rulings set the stage for this appeal. The trial court ruled that Merritt was an employee under the FLSA and that he was not exempt under any of the myriad exemptions Farm Bureau urged. Finally, the trial court found that Merritt had proved he worked 816 hours of overtime—that is,12 hours a week for 68 weeks, as a matter of law. But the trial court then decided that a trial was necessary on whether Merritt had given notice of his

---

[1] Specifically, Texas Farm Bureau Casualty Insurance Company, Texas Farm Bureau Mutual Insurance Company, Texas Farm Bureau Underwriters, Farm Bureau County Mutual Insurance Company of Texas, Southern Farm Bureau Life Insurance Company.

[2] ROA.562 (¶ 2).

[3] ROA.562 (¶¶ 3, 26).

overtime to Farm Bureau. That decision and its consequences are the basis of this appeal.

1.  **Farm Bureau runs its insurance-sales operation through a pyramid structure.**

Farm Bureau is a collection of insurance companies that offers products including auto, home/property, farm/ranch, and life insurance.[4] It uses a pyramid system to organize its insurance-sales operation:



Farm Bureau's Sales Department comprises Farm Bureau's Vice President, two Associate State Sales Directors, and a District Sales

---

[4] ROA.567 (¶ 20).

Manager for each of eight geographic districts.[5] Only agents and Agency Managers can solicit people to buy Farm Bureau insurance.[6] Only the Agency Managers are responsible for recruiting agents.[7] And only agents and Agency Managers are classified by Farm Bureau as independent contractors.[8]

## 2. Farm Bureau classifies all agents and Agency Managers as independent contractors without any legal basis.

Texas Farm Bureau doesn't recall how it classified the Agency Managers as independent contractors, which apparently happened sometime back in the 1950s.[9] It can't recall whether that decision was based on a 50–state survey of the caselaw, the flip of a coin, or an intentional decision to shirk the FLSA. Southern Farm Bureau relies

---

[5] ROA.729 (p. 6:3–15); ROA.802–804 (pp. 25, 28, 29–30); ROA.563 (¶ 4).

[6] ROA.581 (p. 35); ROA.623–624 (pp. 205–06); ROA.660 (pp. 12–13); ROA.729 (pp. 6–7); ROA.802–804 (pp. 28–31); ROA.1024, 1057 (pp. 46, 180).

[7] ROA.802–804 (pp. 24–28, 30).

[8] ROA.847 (p. 202); ROA.870 (p. 15); ROA.623 (pp. 203–04).

[9] ROA.591–92 (pp. 74–81); ROA.630–633 (pp. 233–43); ROA.639 (p. 269); ROA.704 (pp. 188–89).

solely on the existence of the contract for its decision.[10] Since classifying the Agency Managers as independent contractors, however, Farm Bureau hasn't looked back. Until a group of Agency Managers sued Farm Bureau for unpaid overtime in 2017, Farm Bureau had not done any sort of review or analysis to determine whether Agency Managers are properly classified.[11] It still hasn't. Farm Bureau hasn't considered any changes in the Agency Managers' working conditions or updates in FLSA law over the last 70 years to confirm it classified its Agency Mangers correctly. Nothing the Court will hear from Farm Bureau was a basis it relied on when classifying its Agency Managers. All Farm Bureau can provide are after–the–fact excuses.

**3.   Farm Bureau's insurance agents primarily solicit new customers and service policyholders out for their assigned insurance agencies.**

All Agency Managers begin their working relationship with Farm

---

[10] *See* ROA.704–705 (pp. 186–92); *but see Hopkins v. Cornerstone Am.*, 545 F.3d 338, 346 (5th Cir. 2008) (recognizing that signing a contract or having an intent to be a contractor is irrelevant to whether a worker is an employer or contractor under the FLSA).

[11] ROA.591–92 (pp. 74–81); ROA.632–633 (pp. 240–43); ROA.704–705 (pp. 188–89).

Bureau as insurance agents.[12] Agents primarily solicit customers to buy Farm Bureau's insurance products and service its policyholders in their assigned counties.[13] There are about 700 active agents in Texas.[14] Agents sign standard contracts with Farm Bureau stating that they're independent contractors. The contracts make them "captive" to Farm Bureau—meaning they can sell only Farm Bureau insurance or third-party insurance Farm Bureau approves.[15]

Farm Bureau pays agents direct sales commissions for sales that result from their solicitations and direct renewal commissions when policies of insureds Farm Bureau assigns them renew.[16] Farm Bureau owns the agents' and the Agency Managers' books of insurance

---

[12] ROA.983 (pp. 79–80); ROA.757 (p. 121); ROA.823 (p. 109); ROA.895 (p. 115).

[13] ROA.996 (p. 132); ROA.804 (pp. 30–32).

[14] ROA.615 (p. 171).

[15] ROA.729 (pp. 8–9); ROA.805–806 (pp. 37–38); ROA.990 (p. 108); ROA.1045 (pp. 132–33); ROA.691 (pp. 134–37); ROA.1152 (p. 58).

[16] ROA.798 (pp. 7–8).

accounts.[17] It decides whom to assign insurance accounts to.[18] It also exclusively sets the commission rates—and changes these rates at will.[19]

## 4. Farm Bureau's Agency Managers primarily manage their assigned insurance agencies.

Agency Managers oversee the agents assigned to the agencies they manage.[20] Rather than solicit people to buy insurance, the Agency Managers' most important job is managing their assigned agencies (which cover a county or group of counties) to meet Farm Bureau's expectations.[21] Their top responsibilities for doing this are recruiting, training, and supervising Farm Bureau agents.[22] Their other job duties

---

[17] ROA.739 (p. 48); ROA.1860–1861 (pp. 88–93).

[18] ROA.739 (pp. 48–49); ROA.813, 857–858 (pp. 66–67, 245–46).

[19] ROA.741 (p. 57); ROA.800 (p. 15); ROA.1865–1866 (pp. 107–10).

[20] ROA.809, 821–822 (pp. 51, 101–04); ROA.732 (p. 18); ROA.977, 996 (pp. 56, 132); ROA. 1042–1043 (pp. 121–22); ROA.1845 (p. 26).

[21] ROA.821 (pp. 100–01); ROA.767 (pp. 158–60); ROA.986 (pp. 91, 132); ROA.1160 (p. 90); ROA.676 (pp. 74–76); ROA.1843 (p. 18).

[22] ROA.1020 (pp. 30–31); ROA.801 (pp. 18–20); ROA.822 (pp. 103–04); ROA.986, 988 (pp. 91, 101); ROA.767 (pp. 158–60); ROA.677 (pp. 78–79); ROA.1844–1845 (pp. 25–26).

involve generally managing their assigned agencies and regularly meeting with and maintaining a good working relationship with the nonprofit County Farm Bureau boards.[23] Each agency operates from the offices out of a County Farm Bureau, which are affiliates that handle Farm Bureau's nonprofit affairs in the area.[24]

Farm Bureau only hires Farm Bureau agents or existing Agency Managers to vacant Agency Manager positions.[25] There are about 140 active Agency Managers.[26] To become an Agency Manager, a vacancy must open up at one of these agencies.[27] Farm Bureau will then notify its agents and Agency Managers about the position and share details

---

[23] ROA.740 (pp. 50–52); ROA.773 (pp. 185–86); ROA.821, 824–825 (pp. 100–01, 111–14); ROA.986 (p. 91); ROA.1017, 1032 (pp. 18, 78–79); ROA.897 (pp. 124–25).

[24] ROA.971–972 (pp. 33–34); ROA.736–737 (pp. 35–38); ROA.1864 (p. 103).

[25] ROA.971, 983 (pp. 30–31, 79–80); ROA.757 (p. 121); ROA.823 (p. 109); ROA. 883, 899 (pp. 66, 130–31).

[26] ROA.812,815–816 (pp. 63, 77–78).

[27] ROA. 808–809, 814 (pp. 48–51, 73); ROA.736 (pp. 35–37); ROA.758–759 (pp. 125–26); ROA.763 (pp. 142–144); ROA.970, 984, 986–987, 989 (pp. 28, 84–85, 93–97, 102–103); ROA.1040–1041 (pp. 113–15).

about the agency to let anyone interested know about the income opportunities there.[28] Farm Bureau will then interview those that apply to fill the vacancy and decide who to hire to become manager.[29] Farm Bureau typically hires new Agency Managers to start in smaller, rural offices with fewer agents and insureds to handle.[30] If an Agency Manager succeeds in that setting, Farm Bureau may consider promoting the Agency Manager to a larger Farm Bureau office.[31] Larger agencies in populated areas typically bring in more commissions than smaller, rural agencies.[32] When agents or Agency Managers are hired to manage an agency in another county, Farm Bureau does not let them

---

[28] ROA.815 (pp. 74–76); ROA.986–987 (pp. 93–97); ROA.899 (pp. 130–31).

[29] ROA. 808–809, 814, 825 (pp. 48–51, 73, 116–17); ROA.736 (p. 37); ROA.758–759 (pp. 125–26); ROA.970 (p. 28); ROA.1041 (pp. 114–15); ROA.641 (pp. 276–77).

[30] ROA.984 (pp. 84–85); ROA.1041–1042 (pp. 117, 119).

[31] ROA.984 (pp. 84–85); ROA.816 (pp. 81–83); ROA.763–764 (pp. 142–47); ROA.1041–1042 (pp. 117, 119); ROA.1861–1862 (pp. 93–96).

[32] ROA.814–815 (pp. 73–74); ROA.763–764 (pp. 142–47); ROA.988 (p. 100).

take their old books of insurance accounts with them, except for a handful of personal accounts.[33]

Merritt signed a standard contract like other Agency Managers.[34] These contracts provide that Agency Managers are captive independent contractors.[35] Similarly, the contracts require the Agency Managers to follow Farm Bureau's policies and procedures and to assist the agents' solicitations and service of Farm Bureau insureds.[36] Farm Bureau must also preapprove any advertising done by Agency Managers if they, for instance, use its name or logo to recruit.[37]

Agency Managers can earn direct sales and renewal commissions.[38] But because their opportunities for direct sales are

---

[33] ROA.838 (pp. 168–69); ROA.759 (pp. 126–27).

[34] *See, e.g.,* ROA.656 (¶ 12).

[35] ROA.729 (pp. 8–9); ROA.805–806 (pp. 37–38); ROA.990 (p. 108); ROA.1045 (pp. 132–33); ROA.691 (pp. 134–37); ROA.624 (pp. 207–08).

[36] ROA.798 (pp. 7–9); ROA.970–971, 974–975, 980 (pp. 29–30, 44–45, 48, 69); ROA.12258 (§ 2); ROA.1334 (§ 2).

[37] ROA.736 (p. 34); ROA.810–811 (pp. 57–59); ROA.970–971 (pp. 29–30); ROA.1054 (pp. 167–68); ROA.1862 (p. 96).

[38] ROA. 798 (pp. 7–9); ROA.610–611 (pp. 153–54).

significantly diminished, they also earn overwrite sales commissions from the sales of the agents they manage and overwrite renewal commissions when the policies of their agents' insureds renew.[39] They also earn bonus commissions for their agencies' performance.[40] Commissions are paid, however, only if Farm Bureau actually issues or renews the policy.[41]

Farm Bureau sets the targeted insurance-sales production an agency should achieve based, in part, on how many agents it deems that agency can support.[42] For example, if Farm Bureau assigns an agency an agent factor of 3.5, it must meet sales targets reflective of an office of 3–4 agents.[43] While the Agency Managers receive bonus commissions for their agencies' performance, failing to meet Farm Bureau's assigned

---

[39] ROA. 798 (pp. 7–9); ROA.1160 (p. 90); ROA.1082 (p. 40).

[40] ROA.801 (pp. 19–21).

[41] ROA.798–799,801 (pp. 9–11, 19–20); ROA.611 (p. 156); ROA.902 (pp. 144–45); ROA.1850–1851 (pp. 48–50).

[42] ROA.985 (pp. 88–89); ROA.1856 (p. 70).

[43] ROA.985 (pp. 88–89).

targets places their jobs in jeopardy.[44] Not surprisingly, Agency Managers like Merritt worked over 40 hours a week regularly.[45]

## 5. Farm Bureau's Sales Department manages the agents and Agency Managers.

Merritt performed his job duties under direction and oversight of Farm Bureau's Sales Department.[46] In that department, eight District Sales Managers are responsible for training and supervising the agents and the Agency Managers in their districts.[47] They do the actual hiring, firing, assignment, and promotion of agents and Agency Managers.[48] They (and at times those at the top of the Farm Bureau sales pyramid) determine whether to hire potential agents that the Agency Managers

---

[44] ROA.808 (p. 46); ROA.769 (p. 165); ROA.980 (p. 66); ROA.1856–1858 (pp. 70, 74–76, 78).

[45] ROA.565 (¶ 3); ROA.918 (p. 207); ROA.1845–1846 (pp. 28–30).

[46] ROA.881 (p. 58); ROA.980 (p. 69); ROA.1026 (p. 55); ROA.1520–1522.

[47] ROA.729 (p. 6); ROA.802–804 (pp. 25, 28, 29–30); ROA.1017–1018, 1040 (pp. 20–22, 110–11); ROA.1520–1522.

[48] ROA.808–809, 812 (pp. 48–51, 62); ROA.731 (pp. 14–15); ROA.756 (pp. 116–17); ROA.977 (p. 55); ROA.1026 (p. 57); ROA.874 (pp. 31–34); ROA.1847 (p. 34).

recruit and whether to fire agents.[49] They're responsible for overseeing how Agency Managers manage their agencies, and provide Agency Managers with training and instruction on how to recruit, train, and supervise their agents.[50] Gary Wood was Merritt's District Sales Manager.[51]

Above the District Sales Managers are two Associate State Sales Directors who oversee the District Sales Managers in their regions, and Farm Bureau's Vice President of Sales who oversees the sales operation.[52] Farm Bureau only classifies those in its Sales Department as employees.[53] Agents and Agency Managers are classified as independent contractors.[54]

---

[49] ROA.808–809, 812 (pp. 48–51, 62); ROA.731 (pp. 14–15); ROA.756 (pp. 116–17); ROA.977 (p. 55); ROA.1026 (p. 57); ROA.874 (pp. 31–34).

[50] ROA.809 (pp. 51–52); ROA.739–740 (pp. 49–50); ROA.741 (pp. 55–56).

[51] ROA.565 (¶ 4); ROA.1840 (p. 9).

[52] ROA.729 (p. 6); ROA.966 (p. 12–13); ROA.876 (p. 41).

[53] ROA.847 (p. 202); ROA.870 (p. 15).

[54] ROA.623 (pp. 203–04).

**6.    Merritt sues under the FLSA to recover the overtime pay he was denied because Farm Bureau misclassified him as a contractor.**

In November 2019, Jerry Merritt became the latest former Agency Manager to challenge his classification and seek unpaid overtime under the FLSA as an employee.[55] Before Merritt sued, other former Agency Managers in *Ferguson* had brought a collective action against Farm Bureau for unpaid overtime based on their misclassification. *See Ferguson v. Texas Farm Bureau Bus. Corp.*, No. 6:17-CV-111-RP, 2018 WL 1392704, at *1 (W.D. Tex. Mar. 20, 2018). Merritt's FLSA claim was nearly identical to the claims of the *Ferguson* Agency Managers.[56]

And like in *Ferguson*, Farm Bureau contested its FLSA liability on nearly every front. Farm Bureau argued, for example, that Merritt was an independent contractor; that he was exempt under the FLSA's administrative, executive, and highly compensated employee exemptions; that he was exempt under the FLSA's retail exemption;

---

[55] ROA.58.

[56] ROA.6312–6313.

15

and that he was exempt under the FLSA's outside-salesperson exemption.[57]

## 7. The trial court holds on summary judgment that Merritt was a nonexempt FLSA employee who worked at least 816 hours of overtime.

In May 2023, the trial court granted Merritt's summary-judgment motions on all these issues—determining that Merritt was a nonexempt FLSA employee as a matter of law.[58] The Court also granted Merritt's summary-judgment motion on hours worked, holding as a matter of law that Merritt had worked at least 816 hours of overtime.[59] (The Court also granted Farm Bureau summary judgment, finding that Merritt's overtime pay must be calculated with a .5x multiplier as opposed to a 1.5x multiplier.[60])

---

[57] *See e.g,* ROA.6308, 6337, 6348–6353.

[58] *Id.*

[59] ROA.6351. The parties later stipulated to a three-year lookback period with corresponding hours and regular rates for calculating unpaid overtime. ROA.6426–6427.

[60] ROA.6354–6356.

In his summary-judgment motion on overtime hours, Merritt explained that Farm Bureau violated its statutory duty to keep records of his hours worked and that, under the standard for employers who violate their record-keeping obligations, Farm Bureau failed to dispute those overtime hours.[61] Farm Bureau likewise moved for summary judgment, claiming that it shouldn't be liable because it lacked notice of the overtime he worked.[62] Merritt countered that Farm Bureau had actual knowledge he worked overtime and that it also had constructive knowledge since it should have known his hours if it had simply complied with its statutory duty to record them.[63] The Court granted Merritt's motion on his hours worked.[64] And it orally denied Farm Bureau's.[65] Then, at a hearing the Thursday before trial, Farm Bureau asked whether its notice issue survived given the Court's summary

---

[61] ROA.6349–6351.

[62] *See generally* ROA.3386.

[63] *See generally* ROA.3609.

[64] ROA.6349–6351.

[65] ROA.11328 (p. 10:4–11).

judgment on Merritt's hours worked. Without further briefing, the Court decided that notice could go to a jury.[66] The next day the parties resolved by stipulation all remaining issues except the notice issue, which they stipulated would be the only issue for trial.[67]

### 8. The court holds a trial over whether Farm Bureau had actual or constructive knowledge of Merritt's overtime, in which the jury found it did not.

The parties started trial that Monday, May 22nd.[68] During trial, the undisputed evidence—including from Farm Bureau's witnesses—established that Farm Bureau failed to track Merritt's hours, that it had no timekeeping policies to know whether Merritt was working overtime, that it had no policies prohibiting Merritt from working overtime, that it let Merritt choose his schedule and hours, and that it contractually permitted Merritt total control over his daily activities.[69]

---

[66] ROA.11328–11329 (pp. 10:24–11:4).

[67] ROA.6426–6427.

[68] ROA.6900.

[69] ROA.7031–7032, 7034, 7047–7048, 7057–7058, 7063–7066, 7071–7072, 7098 (pp. 132:5–133:25, 135:5–14, 148:13–149:10, 158:1–159:1, 164:1–7, 165:1–7, 166:3–12, 167:8–16, 172:9–17, 172:23–173:9, 199:13–

The evidence also established that Merritt's supervisors knew the job requires Agency Managers to work over 40 hours a week at times and that Merritt worked over 40 hours a week some weeks.[70] And the evidence confirmed that Farm Bureau classified Merritt as a contractor, that Farm Bureau told Merritt he's a contractor, that Merritt did not tell Farm Bureau that he believed he was an employee, and that Merritt did not tell Farm Bureau he was working overtime.[71]

After evidence closed, the parties cross-moved for judgments under Rule 50(a).[72] Farm Bureau argued that Merritt needed to notify it

---

15); ROA.7320, 7339–7344, 7347, 7381, 7407–7408 (pp. 153:19–22, 172:19–176:13, 177:8–16, 180:2–6, 214:16–18, 214:19–20, 240:10–22, 241:15–18).

[70] ROA.7036–7037, 7048 (pp. 137:10–18, 138:17–20, 149:11–17); ROA.7338–7343, 7400, 7402–7404, 7407–7408 (pp. 171:5, 172:19–176:13, 233:7–9, 235:25–236:7, 237:19–22, 240:15–17, 241:15–18).

[71] ROA.7072–7073, 7110–7111 (pp. 173:10–174:9, 211:25–212:7); ROA.7226, 7233–7235, 7257–7260, 7265, 7275–7276, 7296, 7352–7353, 7363–7364, 7373, 7376, 7415, 7419–7421, 7425 (pp. 59:1–5, 66:19–68:5, 90:25–93:22, 98:9–14, 108:22–109:3, 129:10–15, 185:17–24, 185:25–186:8, 196:24–197:1, 206:14–16, 206:17–19, 206:20–24, 209:4–8, 248:3–12, 252:24–253:5, 254:5–19, 258:21–25).

[72] *See e.g.,* ROA.7432–7433, 7437–7449 (pp. 265–66, 270–282).

19

that he was working overtime without proper pay but failed to.[73] Merritt disputed that he was legally required to notify Farm Bureau and that it had actual and constructive knowledge he worked overtime because it knew the Agency Manager job required overtime, and because Farm Bureau had an opportunity to know about his overtime through reasonable diligence had it tracked his hours.[74] The Court denied both motions but then instructed the jury, over Merritt's objection, that Farm Bureau's failure to pay overtime was not an FLSA violation if Merritt "fail[ed] to notify" Farm Bureau of the overtime work.[75]

Merritt objected to the charge because it erroneously imposed an obligation to notify Farm Bureau he was working overtime to establish actual or constructive knowledge of overtime[76] and failed to instruct the jury that an employer is legally required to track his hours, which

---

[73] ROA.7432–7433 (pp. 265:2–11, 265:22–266:1).

[74] *See e.g.,* ROA.7438–7441 (pp. 271:13–274:18, 280:5–18).

[75] ROA.7436, 7452 (pp. 269:7–9, 285:19–20); ROA.6609–6610.

[76] ROA.7509–7511 (pp. 8:12–10:9).

establishes constructive knowledge of hours worked.[77] The objections were overruled.[78] And Farm Bureau's closing argument dwelled on how Merritt never notified it about his overtime—spotlighting the charge language explaining that employees must notify their employers of their overtime work.[79] And the jury returned a verdict for Farm Bureau.[80]

## 9.     The trial court denies Merritt's Rule 50(b) and 59 motions.

About three weeks later, on June 14, 2023, the Court entered a final judgment, ordering that Plaintiff take nothing.[81] Then on July 12, 2023, Merritt moved under Rule 50(b) and Rule 59(a) and (e) to vacate that judgment and grant him a new trial or render him judgment as a

---

[77] ROA.7507–7509 (pp. 6:18–7:9, 8:2–11).

[78] ROA.7507–7512 (pp. 6:16–17, 7:8–9, 7:25–8:1, 8:10–11, 9:3–4, 9:11, 9:22–23, 10:8–9, 10:18–19, 11:4).

[79] *See* ROA.7553–7554 (pp. 52:25–53:11); ROA.7545–7547, 7549, 7551–7552, 7556–7560 (pp. 44:1–14, 45:13–15, 46:2–7, 48:18–21, 50:21–24, 51:11–14, 55:4–10, 56:8–11, 56:8–11, 57:19–58:1, 59:4–5, 59:9–19).

[80] ROA.7576 (pp. 75:11–17); ROA.6616.

[81] ROA.6617–6618.

21

matter of law.[82] On October 11, 2024, the trial court entered a written order denying the Rule 50 and 59 motions.[83] Merritt now appeals.[84]

## SUMMARY OF THE ARGUMENT

For several reasons, Farm Bureau's arguments that it did not employ Merritt fail.

The first is the simplest and rooted in the plain text of the Fair Labor Standards Act. The Act requires that employers pay for overtime work that is suffered or permitted. Here, Farm Bureau permitted Merritt to work as many hours as he wished, didn't prohibit overtime, and imposed *no* restrictions on how much he worked. Giving the words of the statute their plain and ordinary meaning compels the conclusion that Farm Bureau suffered or permitted all of Merritt's overtime.

---

[82] ROA.6866.

[83] ROA.15243.

[84] As the Court will recall, Merritt filed his notice of appeal before the trial court issued a written ruling as a precaution because the district clerk added a minute entry that the post-judgment motion "is DENIED" following the hearing on the Rule 50 and 59 motions. This Court then abated the appeal pending the issuance of the trial court's written order. *See* Docs. 1, 51, and 55 on this Court's docket.

Second, the FLSA imposes on employers a nondelegable duty to record their employees' hours worked. Farm Bureau did not track Merritt's work but agrees it could have if it wished. An employer who makes no effort to comply with its record-keeping obligations *constructively* knows what the law *requires* it to know. Moreover, an employer that knows unrecorded hours are being worked cannot escape liability by asserting a lack of actual knowledge of the overtime.

Third, employees have no common-law duty to affirmatively request overtime pay by notifying their employer of overtime work. Instead, courts have interpreted the FLSA's definition of "employ" to shield employers who attempt to comply with their statutory duty to record hours worked by imposing a timekeeping policy or system. When the employer has such a system, the employee has a duty to use it and not conceal hours or mislead their employer about their work time. But there was no such system here. And Farm Bureau should not benefit from its failure to impose a timekeeping system, by demanding Merritt comply with a nonexistent policy to not work unauthorized overtime and to report overtime worked.

23

Lastly, the trial court erred in holding that an incorrect overtime multiplier applies. The court misapplied the regulations by misclassifying the commission Merritt was paid as being on a deferred or weekly basis, when they were not. Because the specific regulations were not triggered, the general rule should have applied, and Merritt's overtime pay should be calculated under the plain language of the statute as one and one-half times his regular rate.

## STANDARD OF REVIEW

Merritt raises two issues in this appeal. The first issue addresses whether he was "employed" under the FLSA. The trial court denied Merritt's two Rule 50 motions during and after trial to establish he was employed as a matter of law. Instead, it submitted the issue to the jury with a charge that concocted a common-law legal duty on Merritt to notify Farm Bureau he was working overtime. Because Merritt's first issue challenges legal questions arising from the denial of his Rule 50 motions and the appropriateness of that charge, the Court applies a *de novo* standard of review. *Parkcrest Builders, LLC v. Liberty Mut. Ins. Co.*, 26 F.4th 691, 695 (5th Cir. 2022) ("Pure questions of law are

24

reviewed *de novo*."); *Dupree v. Younger*, 598 U.S. 729, 731–32, (2023). Similarly, for his second issue, Merritt challenges the trial court's summary judgment that determined as a matter of law that Merritt's overtime pay must be calculated with a .5x multiplier instead of a 1.5x multiplier. As this summary-judgment challenge also raises only legal questions, the standard of review for this issue is *de novo* as well. *Id.*

ARGUMENTS & AUTHORITIES

The Court should reverse the trial court's judgment as to two points of law. First, the judgment should be reversed and rendered to provide that Farm Bureau "employed" Merritt for all hours he worked—including overtime. Second, the judgment should be reversed and rendered to provide that Merritt's unpaid overtime is calculated with a 1.5x multiplier.

## 1.   Farm Bureau violated the FLSA by "employing" Merritt to work overtime without compensation.

The record establishes that Farm Bureau violated the FLSA by failing to pay Merritt for his overtime. The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer

25

than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." *White v. Patriot Erectors, L.L.C.*, No. 23-50524, 2024 WL 3181455, at *3 (5th Cir. June 26, 2024) (quoting 29 U.S.C. § 207(a)(1)). Relying on this Court's decision in *Hopkins*, the trial court held on summary judgment that Merritt—like other Farm Bureau Agency Managers—was an employee. The trial court also held that Merritt regularly worked over 40 hours a week. And Farm Bureau admits that it did not pay for Merritt's overtime. So the question here is whether Farm Bureau "employed" Merritt in workweeks he worked overtime. It did.

The Court can reach that result two ways. First, the Court can just follow the FLSA's plain text. The FLSA defines "employ" to include work that the employer suffers or permits. And here Farm Bureau *admits* that it permitted Merritt—like all its Agency Managers—to work over 40 hours in a week. Second, the Court can hold that Farm Bureau employed Merritt in weeks he worked overtime because it had constructive knowledge of his work. When the employer *denies* it

26

suffered or permitted the employee's overtime, courts have looked to whether the employer knew the employee was doing the work (actual knowledge) or whether the employer should have known the employee was doing the work (constructive knowledge) to settle the debate. Each path shows that Farm Bureau is liable under the FLSA for Merritt's unpaid overtime. Merritt therefore explores each in turn.

### A. Farm Bureau "employed" Merritt under the FLSA because it suffered or permitted him to work overtime, which is all the FLSA requires.

Farm Bureau employed Merritt within the FLSA's meaning because it suffered or permitted his overtime. The FLSA states that "'Employ' includes to suffer or permit to work." 29 U.S.C. § 203(g). The FLSA doesn't define "suffer" or "permit," so their ordinary meanings apply. *See Rest. L. Ctr. v. United States Dep't of Lab.*, 120 F.4th 163, 171 (5th Cir. 2024) (interpreting undefined FLSA text using plain, ordinary meaning from the dictionary). According to Merriam-Webster, "suffer" means in relevant part to endure; to put up with; or to allow through

indifference.[85] And "permit" means in relevant part to consent to or to authorize.[86]

Here, Farm Bureau permitted Merritt to work overtime. It put no limits on his hours.[87] Just the opposite, Farm Bureau contractually guaranteed him the freedom to work as much as he wished, including over 40 hours in a week.[88] The number of hours Agency Managers like Merritt work is up to the them.[89] Farm Bureau doesn't prohibit them from working over 40 hours a week.[90] It doesn't have a policy that otherwise limits Agency Managers from working overtime.[91] It doesn't

---

[85] *See Merriam-Webster*, https://www.merriam-webster.com/dictionary/suffer (last visited 01/27/2025).

[86] *See id.*, https://www.merriam-webster.com/dictionary/permit.

[87] ROA.7031 (p. 132:5–23).

[88] *See e.g.,* 12258 (§ 2.A); ROA.7057–7058 (pp. 158:13–159:1).

[89] ROA.7031–7032, 7048, 7057, 7063, 7098 (pp. 132:5–23, 133:15–19, 149:5–10; 158:4–12, 164:1–4; 199:13–15).

[90] ROA.7031–7032, 7047–7048, 7063 (pp. 132:24–133:18, 148:23–149:4, 164:5–7, 164:17–20).

[91] ROA.7032, 7057, 7066 (pp. 133:6–18, 158:4–7, 167:12–16).

even *discourage* Agency Managers from working overtime.[92] This is not a case of an employer merely turning a blind eye to an employee violating a no-overtime policy. Rather, to Farm Bureau, Agency Managers can work "as much or as little as they want to."[93]

But that's not all the evidence showed. Farm Bureau acknowledges that no Agency Manager works part-time and that it's a full-time plus position where Agency Managers at times must work over 40 hours in a week.[94] It knows very productive Agency Managers work over 40 hours in a week and that it incentivizes Agency Managers to work as much as possible.[95] And it knows that Merritt was an

---

[92] ROA.7032, 7034, 7064, 7066 (pp. 133:6–18, 135:5–14, 165:1–7, 167:8–11); ROA.7407 (pp. 240:10–14).

[93] ROA.7057–7058 (pp. 158:13–159:1); ROA.7032 (p. 133:22–25).

[94] ROA.7036–7037, 7048 (pp. 137:10–18, 138:17–20, 149:11–17); ROA.7338, 7400, 7402–7404 (pp. 171:5, 233:7–9, 235:25–236:7, 237:19–22).

[95] ROA.7048–7050, 7071 (pp. 149:18–25, 150:25–151:8, 172:6–8); ROA.7404–7405 (pp. 237:23–25, 238:1–13, 238:14–17).

exceptionally productive Agency Manager—managing a top agency that enriched Farm Bureau with over $20 million a year in revenue.[96]

Farm Bureau never told Merritt not to do his work.[97] Instead, Farm Bureau agrees it benefited from, expected, and approved his work.[98] In sum, how much Merritt worked (including whether it was more than 40 hours a week) was simply irrelevant to Farm Bureau, because all that mattered to it was his production.[99]

That Farm Bureau issues Agency Managers like Merritt a blank check to work over 40 hours a week is hardly surprising given its view that Agency Managers are independent contractors. In fact, Farm Bureau continues to tout granting Agency Managers the freedom to work as much as they want. *See, e.g.,* ROA.10456 (Farm Bureau "did

_____

[96] ROA.7183, 7350, 7408 (pp. 16:10–19, 183:15–20, 241:6–12).

[97] ROA.7071–7072 (pp. 172:15–17, 172:23–173:2).

[98] ROA.7071–7072 (pp. 172:9–14; 173:3–9); ROA.7190, 7196–7197, 7208–7209, 7211, 7214, 7347–7350, 7395–7400, 7405, 7408 (pp. 23:17–25, 29:12–30:10, 41:22–42:3, 44:8–20, 47:1–6, 180:15–25, 181:1–24, 182:1–6, 182:14–25, 183:1–11, 183:15–20, 228:10–21, 229:24–230:2, 231:20–25, 232:4–6, 232:11–18, 232:23–233:6, 238:1–13, 241:6–12).

[99] ROA.7038–7039 (pp. 139:10–20, 140:4–11); ROA.7347 (pp. 180:9–14).

not impose any express or implied hours requirements on Merritt"); *id.* ("Merritt set his own schedule, determining what hours he worked"); *id.* ("Merritt neither needed to inform, nor did he inform, Defendants of his schedule"); ROA.10456–57 ("He did not have to submit the hours he intended to work or disclose the hours he did work to Defendants"); ROA.10457 ("there was no hours obligation in his contracts or otherwise"); ROA.10472 ("Multiple witnesses testified that Merritt's position did not have any express or implied maximum, minimum, or expected hours component.").

Allowing Merritt to work unlimited hours like this exemplifies suffering or permitting overtime. After all, Farm Bureau can't point to a single moment Merritt worked that wasn't authorized and permitted by Farm Bureau. And it certainly cannot point to any work—let alone overtime—it prohibited. This is key because, as this Court acknowledged in *Patriot Erectors*, Farm Bureau had a duty to not let overtime work happen if it didn't actually permit it. *See Patriot Erectors, L.L.C.*, 2024 WL 3181455, at *6 (quoting 29 C.F.R. § 785.13) ("In all such cases it is the duty of the management to exercise its

control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so."). Farm Bureau didn't even promulgate a rule against overtime, and—far from *stopping* overtime work from happening—Farm Bureau gave its full-throated consent while sitting back and accepting the benefits of Merritt's 816-plus hours of overtime.

To be sure, whether an employer suffered or permitted an employee's overtime sometimes turns on whether the employer had actual or constructive knowledge of the overtime. But the FLSA's plain text imposes no explicit knowledge requirement in all cases. So categorically adding one where the undisputed facts show the work was permitted—whether known or not—would rewrite the FLSA that Congress enacted.

And it makes sense that *permission* can be granted with no knowledge of whether the permitted activity occurs. Consider parents who tell their teenager that she has no curfew and that she may come

home as early or late as she wants. Can the parents legitimately claim they did not permit her to stay out past 3 a.m. simply because they went to sleep hours earlier without knowing what time she returned?

When the employer's knowledge is relevant, it's because the employer imposed a policy regulating or prohibiting overtime work, which the employee violated by working overtime off the clock.[100] These employers are akin to parents who impose a curfew of 11 p.m. They do not authorize their teenager to stay out past 3 a.m. Whether they can be

---

[100] *See, e.g., Newton v. City of Henderson*, 47 F.3d 746, 749 (5th Cir. 1995) ("The City established specific procedures to be followed in order to receive payment for overtime. An employee was required to submit a request for overtime within 72 hours of the time worked and to use a specified payroll form. Newton ignored these procedures."); *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 965 (5th Cir. 2016) ("Fairchild—like the plaintiff in *Newton*—ignored her employer's policy and procedures: she neither sought authorization to work such overtime nor reported the alleged hours through All American's timekeeping system"); *Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 F. App'x 448, 459 (5th Cir. 2009) ("it is undisputed that all of Boeing's employees were aware of its policy prohibiting overtime work without authorization, and we have expressly rejected the notion that an employer does "not have the right to require an employee to adhere to its procedures for claiming overtime.""); *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005) (requiring employee to submit timesheets).

said to suffer or permit her staying out past curfew depends on whether they know or suspect their rules are being violated.

In the FLSA context, courts consider whether the employer knew or should have known the employee was working off the clock despite the rules.[101] That is, an employer does not suffer or permit work if it neither knew nor should have known the employee was working.[102] But if the employer does know work is being done (or should have known) but doesn't act to stop it, then the employer is held to suffer or permit the overtime. Just like the parents can be said to have permitted their daughter's late return if, for example, they knew she'd broken her 11 p.m. curfew every night for the last year but never punished her rule-breaking.

Here, however, it's unnecessary to analyze whether Farm Bureau knew or should have known Merritt was working overtime because it *agrees* Merritt was allowed to work overtime—i.e., there was no curfew. So all of Merritt's work (including his overtime) was suffered or

---

[101] *See id.*

[102] *See id.*

permitted by Farm Bureau, regardless of whether Farm Bureau knew or should've known about it. And because there's no dispute that Farm Bureau permitted Merritt's overtime, the Court need not analyze any further to hold that Farm Bureau "employed" Merritt under the FLSA.

## B. Farm Bureau "employed" Merritt under the FLSA because it had constructive knowledge of his work time.

While an employer's knowledge of overtime work is irrelevant when the employer doesn't prohibit overtime work, the Court may find for Merritt without reaching that conclusion. That's because Farm Bureau had constructive knowledge of his hours worked because it failed to track his time as required by the FLSA.

The logic here is straightforward: because an employer is *required* by law to record the number of hours its employees work, the employer *should* know how much work is done. When an employer keeps accurate time records, it necessarily knows how many hours are worked. Therefore, if an employer makes no effort to keep the required records, it is constructively charged with the knowledge it was obligated, but refused, to acquire.

This Court has never had an occasion to state the rule so plainly. Nearly all cases considering an employer's knowledge of work involve an employee concealing prohibited overtime from the employer's record-keeping efforts. That is, where the employer both prohibited overtime and tried to keep accurate time records, but its efforts were thwarted by the employee's misconduct. Even in those cases—because "suffer" or "permit" is so broad a standard—the employer may still be liable if it otherwise knew or should have known of the "off-the-clock" work. Because the employer's conduct here is just more extreme than the employers in this Court's earlier cases, holding for Merritt neither disturbs any of this Court's precedent nor changes the expectations of employers or workers. Just the opposite, it only solidifies those expectations.

### (1) Farm Bureau's record-keeping violation establishes that it had constructive knowledge.

"To recover unpaid overtime under the FLSA, an employee 'must show that he was 'employed' ... during the periods of time for which he claims unpaid overtime[,] which requires a showing that the employer 'had knowledge, actual or constructive, that he was working.'" *Loy v.*

36

*Rehab Synergies, L.L.C.*, 71 F.4th 329, 337 (5th Cir. 2023) (quoting *Newton*, 47 F.3d at 748).

Constructive knowledge of work exists if an employer "exercising reasonable diligence would acquire knowledge of this fact." *Loy*, 71 F.4th at 337 (quoting *Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825, 827 (5th Cir. 1973)); *see also Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508, 512 (5th Cir. 1969) (defining constructive knowledge as existing when employer had "opportunity through reasonable diligence to acquire knowledge.") In *Gulf King Shrimp Co.*, this Court explicitly related an employer's constructive knowledge to those facts it has a duty to know: "an employer's knowledge is measured in accordance with his 'duty * * * to inquire into the conditions prevailing in his business.'" 407 F.2d at 512 (quoting *Lenroot v. Interstate Bakeries Corp.*, 146 F.2d 325, 328 (8th Cir. 1945)).

The employer's duty to inquire into its employees' hours worked is found in the FLSA itself. The Act requires that every subject employer "shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of

employment maintained by him[.]" 29 U.S.C. § 211(c). Violating this record-keeping requirement is unlawful. 29 U.S.C. § 215(a)(5). As this Court has said: "the Act places on the employer the obligation of keeping accurate records of the hours worked by his employees, and the employer cannot transfer his statutory duty to his employees." *Goldberg v. Cockrell,* 303 F.2d 811, 814 n. 1 (5th Cir.1962).

"Furthermore, an employer must decide at his peril which employees are covered by the Act." *Castillo v. Givens*, 704 F.2d 181, 194 (5th Cir. 1983), *disapproved of on other grounds*, *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988). That is, an employer must still keep accurate time records for employees it wrongly claims are exempt. *Hobbs v. EVO Inc.*, 7 F.4th 241, 256 (5th Cir. 2021). As well as employees it misclassifies as independent contractors not subject to the FLSA. *Castillo*, 704 F.2d at 194; *Flores v. FS Blinds, L.L.C.*, 73 F.4th 356, 360, 366–67 (5th Cir. 2023).

In sum, Farm Bureau's knowledge is measured against its duty to inquire into the circumstances of the business. *Gulf King Shrimp Co.*, 407 F.2d at 512. Even though it misclassified him, Farm Bureau had a

nondelegable statutory duty to record the hours Merritt worked. *Goldberg*, 303 F.2d at 814; *Hobbs*, 7 F.4th at 256; *Flores* 73 F.4th at 360, 366–67. Farm Bureau has constructive knowledge if it "exercising reasonable diligence would acquire knowledge" of Merritt's work. *Loy*, 71 F.4th at 337.

Merritt worked over 800 hours in the two years preceding his lawsuit.[103] Farm Bureau had the resources and knowhow to comply with its record-keeping duties, both for *other* employees[104] and Merritt.[105] Farm Bureau admitted that if there were a legal reason to track his time, it could have done so.[106] But Farm Bureau never did

---

[103] ROA.6349. *Brennen* notes as an aside that "In the instant case the trial court found that during the three years preceding this lawsuit twenty-six employees had been working an average of thirteen hours of overtime each week. It would seem that an employer exercising reasonable diligence would acquire knowledge of this fact." 482 F.2d at 827. The trial court here found Merritt proved 12 hours per week of overtime. ROA.6349.

[104] ROA.7076–7077 (pp. 177:16–20, 177:25–178:16); *See* ROA.7213 (pp. 46:10–25).

[105] ROA.7077–7078, 7109–7111 (pp. 178:17–20, 179:4–17, 210:23–211:6, 212:8–14).

[106] ROA.7110 (p. 211:7–12).

*anything* to attempt to satisfy its statutory duty to record Merritt's hours worked.[107] This all begs the question, would an employer exercising reasonable diligence acquire knowledge of work hours where it has a nondelegable statutory duty to record those hours and admits it could have done so if it wished?

The answer summons a prior quote from this Court: "if [it] did not know, it was because [it] did not look, or looking, did not see, or want to see what was so plainly there. That is enough." *Mitchell v. Raines*, 238 F.2d 186, 188 (5th Cir. 1956) (rejecting employer's claim to lack knowledge that sale of lumber to State Highway Department was commerce such that FLSA applied).

### (2) Farm Bureau had constructive knowledge of Merritt's work because it knew he was working off the clock.

A corollary to the above analysis is that when an employer knows there is work being done, but the time for that work is not being recorded, it has constructive knowledge of the unrecorded time. This

---

[107] ROA.7032, 7047, 7057, 7065 (pp. 133:19–21, 148:13–22, 158:1–3, 166:3–12); ROA. 7320, 7344, 7347, 7381, 7407 (pp. 153:19–22, 177:8–16, 180:2–6, 214:16–18, 214:19–20, 240:18–22).

follows from the employers' duty to track the number of hours worked every week (29 U.S.C. § 211(c); *Goldberg,* 303 F.2d at 814 n.1) combined with the employer's obligation to exercise reasonable diligence in meeting that duty. *Brennan*, 482 F.2d at 827; *Newton*, 47 F.3d at 748. If an employer trying to record all hours worked becomes aware that nevertheless *some* work time is not being recorded, it thereby learns that it is *not* in fact satisfying its statutory record-keeping duty. Fulfilling that obligation—i.e.*,* recording all hours worked—would necessarily give the employer knowledge of any overtime worked. Taken together, that means an employer who knows that work is being done but the time is not being recorded has constructive knowledge of the unrecorded time being worked.

This concept can be seen in *Brennan*, where the employees worked unsupervised in the field, and reported their time with time sheets. 482 F.2d at 827. The supervisors instructed the workers "that reported overtime hours be kept to a stated minimum level, thus forcing the employees to work unreported and thus uncompensated hours of overtime." *Id.* at 827. This Court held that the employer had

41

constructive knowledge because its supervisors "had the opportunity to get truthful overtime reports but opted to encourage artificially low reporting instead." *Id.* at 828. That is, once it was aware of unreported work, it had constructive knowledge of the overtime because it could have properly recorded it.

Likewise, in *United States Dep't of Labor v. Five Star Automatic Fire Prot.,* this Court said, when describing *Brennan*, "[t]he company argued on appeal that it was unaware that employees were not recording overtime hours. We rejected that argument, holding that the record showed that the supervisor had actual knowledge or, at a minimum, constructive knowledge *that the employees were working, but not reporting, overtime hours.*" 987 F.3d 436, 444 (5th Cir. 2021) (emphasis added). The supervisor in *Five Star Automatic* "said or implied that [workers] shouldn't record pre- and post-shift time." *Id.* Thus, the employer was aware of work going unrecorded despite its policy that required overtime to be recorded. *Id.*

In *Patriot Erectors, L.L.C.*, the employer argued that it was the employer *instructing* the worker to underreport time that mattered.

42

2024 WL 3181455 at *4. But this Court clarified that proof of an instruction to underreport is not required. *Id.* at *5. Instead, the critical factor was that management knew the worker "was performing work outside of typical dayshift hours, and [his supervisor] admitted to knowing that [the worker] was not reporting, or being compensated for, all his work." *Id.* at *6.[108]

That the analysis focuses on whether an employer knows off-the-clock work is occurring can be seen from cases outside this Circuit as well. For example, in how the Fourth Circuit distinguished *Anderson v. Mt. Clemens' Pottery* on the question of the employer's knowledge of overtime work. In *Davis v. Food Lion*, where the employer kept time records but the employee concealed overtime, the Court stated "[e]mployer knowledge was not an issue in *Mt. Clemens* since the employer unquestionably knew that its time clock system was causing its employees to record less time than they were actually working." 792

---

[108] *Patriot Erectors* also observes that the worker had to prove the employer was aware that he was not being compensated for off-the-clock time. 2024 WL 3181455 at *6. Here Farm Bureau admits that Merritt was not paid for hours worked, but only on a commission basis. ROA.11505, 2692.

F.2d 1274, 1277 (4th Cir. 1986) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)). That is, *Mt. Clemens* didn't *need* to consider the employer's knowledge because it was clear that the employer knew that work was being done off the clock. *Id.*

Similarly, in *Raczkowski v. TC Const. Co., Inc.* the Ninth Circuit made it explicit that "[t]he relevant knowledge is not 'I know that the employee was working,' but 'I know the employee *was working and not reporting his time.*'" 8 F.3d 29 (table), 1993 WL 385483, at *1 (9th Cir. 1993). (emphasis added). And in *Wirtz v. Bledsoe*, the Tenth Circuit summarily rejected a claim that the employer lacked knowledge of a misclassified supervisor's overtime when "no record was kept of his time" and his "duties were well known to the defendants[.]" 365 F.2d 277, 278 (10th Cir. 1966).

Here Farm Bureau admits it knew Merritt was working unreported time. It even concedes that Merritt likely worked over 40 hours some weeks but claims that it doesn't know how much because it

didn't track his hours.[109] Indeed, the trial court concluded as much in its summary-judgment order: "Both Texas Farm Bureau and Southern Farm Bureau had deponents who admitted that Merritt "likely" or could have worked more than 40 hours per week. In fact, Merritt's supervisor Gary Wood indicated there was 'no doubt' Merritt worked overtime."[110] Supervisors' knowledge of overtime work is imputable to the company. *Brennan* 482 F.2d at 828. Farm Bureau knew that Merritt was working unrecorded time and should have exercised reasonable diligence to learn how many hours he was working.

Farm Bureau was also put on notice that other Agency Managers were alleging they regularly worked overtime in April 2017. *See Ferguson v. Tex. Farm Bureau Bus. Corp.*, No. 6:17-CV-00111, 2017 WL 7053927, at *1 (W.D. Tex. July 26, 2017), *report and recommendation adopted*, No. 6:17-CV-111-RP, 2018 WL 1392703 (W.D. Tex. Mar. 20, 2018). That is a full two years before Merritt retired and about 30

---

[109] ROA. 7339–7343, 7407–7408 (pp. 172:19–176:13, 240:15–17, 241:15–18)

[110] ROA.6349 (cites omitted).

months before he sued.[111] Shortly after the *Ferguson* suit was filed,
Farm Bureau solicited affidavits from Agency Managers to help oppose
certifying a collective action. *Ferguson v. Tex. Farm Bureau Bus. Corp.*,
No. 6:17-CV-111-RP-JCM, 2018 WL 1598675, at *1 (W.D. Tex. Apr. 2,
2018). The affidavits were prepared forms with blanks to fill in the
worker's name and some dates. *Id.* at *2–3. Farm Bureau collected
about 100 nearly identical affidavits. *Id.* Part of the preprinted form
describes how a suit had been filed seeking to conditionally certify a
"class of Agency Managers like myself, claiming that Agency Managers
have been improperly classified as independent contractors and not
employees." *Id.* at *2. And that the Agency Managers suing had alleged
they "are entitled to overtime compensation for all hours worked over
40 per week going back a number of years." *Id.* This demonstrates that
Farm Bureau knew two important things in Merritt's final two years of
work: (1) that some Agency Managers were claiming to regularly work
over 40 hours a week, and (2) that the work of an Agency Manager was

---

[111] ROA.58.

so uniform across the company that preprinted form affidavits would be accurate for almost all the workers.

Because the undisputed facts show that Farm Bureau knew Merritt was working and his time was not being reported, it had constructive knowledge of his overtime.

### (3) The trial court erred by imposing a duty on Meritt to notify Farm Bureau he was working overtime.

Farm Bureau and the trial court erred by imposing on Merritt, as an employee, a common-law duty to notify his employer of overtime (or else he waives his rights under the FLSA). There's simply no such duty. Instead, workers have a duty to comply with any reasonable timekeeping system set up by the employer. And the caselaw in and out of this Circuit bears that out.

### a. Employees have a duty to comply with their employer's record-keeping system.

In *Davis*, mentioned above, the worker was "required to record his working hours on a time card[.]" 792 F.2d at 1275. The employer had an established policy prohibiting employees unrecorded, "off-the-clock" work. *Id.* at 1275. The worker was aware of the policy and had, in fact,

been twice verbally warned for violating it. *Id.* at 1275. Thus, the court had no trouble finding that the worker had "deliberately acted in such a way to prevent his employer from acquiring knowledge of his alleged uncompensated overtime hours." *Id.* at 1277. As the trial court observed, and the Fourth Circuit echoed, "to accept Davis' theory of the case would mean that Food Lion should have anticipated that employees would routinely falsify their time records in violation of established company policy." *Id.* at 1278.

In *Forrester v. Roth's I. G. A. Foodliner, Inc.*, the Ninth Circuit noted it had previously held that "suffer" and "permit" meant "with the knowledge of the employer." 646 F.2d 413, 414 (9th Cir. 1981) (citing *Fox v. Summit King Mines*, 143 F.2d 926 (9th Cir. 1944)). And it applied that definition to a case where the employee knew he was supposed to report his hours (including any overtime) on timesheets and that the store regularly paid reported overtime. *Id.* at 414. But the employee nevertheless did *not* report his overtime, so the company had no idea he was working unpaid overtime. *Id.* at 414. Since the employer had no

48

reason to suspect unpaid work was happening it couldn't be said to have suffered or permitted it. *Id.* at 414–15.

Despite holding that the employee couldn't claim time that was not reported on his timesheet, the Ninth Circuit cautioned that the rule applied because the employer *kept proper records* and *tried to obey* the FLSA: "This is not to say that an employer may escape responsibility by negligently maintaining records required by the FLSA, or by deliberately turning its back on a situation." *Id.* at 414. Although not cited by *Forrester*, this echoes this Court's similar statement in *Gulf King Shrimp:* "If records have not been kept, and if an employer has been discreetly aloof from those who have served his interest, he may under this argument disown knowledge of them and escape the Act. We cannot accept such a proposition." 407 F.2d at 512. Thus, an employer cannot disclaim knowledge of overtime work by violating its FLSA record-keeping obligations or turning a blind eye to work being done. *Id.* at 512, *Forrester*, 646 F.2d at 414.

*Davis* and *Forrester* were two of the cases this Court relied on in deciding *Newton*. 47 F.3d 746. There, the worker was "explicitly told by

49

[his supervisors] that he could not work unauthorized overtime hours." *Id.* at 749. The worker "submitted time reports to the [employer] and was paid for all of the hours claimed on these time reports." *Id.* at 748. The employer had "specific procedures to be followed in order to receive payment for overtime." *Id.* at 749. But the worker "ignored these procedures." *Id.* at 749. This Court found the employer did not have "reason to believe that the information reported to it via [employee's] signed payroll forms was inaccurate." And to hold that the employer had constructive knowledge of unpaid overtime because the supervisor could investigate whether the worker was being truthful in his payroll forms "would essentially be stating that the [employer] did not have the right to require an employee to adhere to its procedures for claiming overtime." *Id.* at 749.

A worker's duty to comply with an employer's timekeeping procedure relates to the employer's constructive knowledge. As the Seventh Circuit observed, "[o]ne way an employer can exercise diligence is by establishing a reasonable process for an employee to report uncompensated work time." *Allen v. City of Chicago*, 865 F.3d 936, 938

(7th Cir. 2017). The employer then has the "right to require an employee to adhere to its procedures for claiming overtime." *Newton* 47 F.3d at 749. Thus, "an employer with such a time system will not ordinarily be chargeable with constructive knowledge of unreported work." *Perry v. City of New York*, 78 F.4th 502, 513 (2d Cir. 2023) (citing *Allen*, 865 F.3d 936).

These (and other) cases holding that an employee who evades a reasonable timekeeping system may not recover unless there is proof that the employer knew or should have known of unrecorded time are rooted in a single concept. Before it can be liable for unpaid overtime, "[a]n employer must have an opportunity to comply with the provisions of the FLSA." *Forrester*, 646 F.2d at 414. The Sixth Circuit laid out how an employer is not liable when the employee violates its established process for reporting work time:

> Under the FLSA, if an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process. When the employee fails to follow reasonable time reporting procedures she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA.

51

*White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012) (citation omitted).

**b. Employees do not have a general common-law duty to request or report overtime absent a timekeeping procedure.**

No court has imposed a general common-law duty on employees to request overtime when the employer doesn't have a procedure for reporting uncompensated time. To be fair to Farm Bureau and the trial court, this Court has used language that, taken out of context, sounds like workers owe a general duty to request overtime. For example, in *Von Friewalde*, the Court said "[w]hile an employer may not stand idly by without paying an employee that he knows or should know is working overtime, an employee has a duty to notify his employer when he is working extra hours." 339 Fed. Appx. at 459 (quotations omitted). This statement, though, is sandwiched between two critical distinguishing facts. First, "these [workers] admitted that, on the vast majority of occasions, they were paid when they notified their superiors that they had worked overtime[,]" and "all of Boeing's employees were aware of its policy prohibiting overtime work without authorization[.]"

*Id.* at 459. Like in *Newton*, the overtime policy was clear and overtime was paid when requested, so there was no reason for the employer to believe its time records were inaccurate.

One worker in *Von Friewalde*, though, tellingly had a different outcome. "It is also clear from Lozano's testimony that his superiors knew or should have known that he was working extra hours on the days for which he did not receive overtime." *Id.* at 460. The Court did not find that Lozano "notified" his employer he was working extra hours or that he requested overtime and was denied. *Id.* Instead, the worker satisfied his burden with testimony establishing that his superiors knew or should have known he was working time for which he was not paid. *Id.* Evaluating *Von Friewalde*'s language and holdings in context shows it stands for the exact same rule as *Newton* (employees must comply with reasonable timekeeping policies) and not for a general common-law duty requiring employees to "give notice" of overtime work and request overtime pay when the employer has no rules against overtime or a timekeeping system to report overtime to.

53

Rather than a requirement to "give notice" of overtime, the opposite is true. An employer armed with knowledge of overtime "cannot stand idly by and allow an employee to perform overtime work without proper compensation, *even if the employee does not make a claim for the overtime compensation.*" *Newton*, 47 F.3d at 748 (emphasis added). The Supreme Court has "frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981). Moreover, "the purposes of the Act require that it be applied even to those who would decline its protections." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 302 (1985).

And thus, contractual agreements and subjective belief that a person is an independent contractor not owed overtime does prevent him from recovering under the FLSA. *Hopkins*, 545 F.3d at 346. Even misleading an employer about the number of hours worked is not, standing alone, grounds for denying recovery. Instead, this Court has held there is only "a narrow defense" in such as case because "an

employee cannot waive her rights under the FLSA without supervision by the Secretary of Labor or the Court." *Portillo v. Permanent Workers, L.L.C.*, 793 Fed. Appx. 255, 259 (5th Cir. 2019), *revised* (Nov. 12, 2019) (internal quotations and citations omitted). A worker is only estopped from bringing an overtime claim when he misrepresents his hours *and* the employer does not know and has no reason to believe the report is inaccurate. *Id.* at 259 (citing *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972)). This Court reaffirmed as much in *Newton*, by determining that the worker's incorrect time sheets alone would not be dispositive if the employer had reason to believe they were inaccurate. 47 F.3d at 748–49.

### c. Farm Bureau lacked a timekeeping system and so Merritt had no duty to report overtime.

As to Merritt's claims, Farm Bureau never prohibited overtime work and there was no procedure for claiming overtime to which Farm Bureau required adherence.[112] Merritt couldn't falsify his time because

---

[112] ROA.11473.

it wasn't tracked or submitted to Farm Bureau.[113] And Farm Bureau admitted Merritt never misled them about his hours worked.[114]

Merritt's counsel cannot find, Farm Bureau has never cited, and the trial court did not rely on any case from this Court where an employer did not have a timekeeping system, made no efforts to comply with the FLSA's record-keeping requirement, and did not forbid or limit overtime, but the Court nevertheless held that the worker had to affirmatively "give notice" of overtime worked.[115]

The law placed on Farm Bureau the duty to comply with the FLSA, and it had the opportunity to do so—but it refused. Caught out, it seeks to escape responsibility for violating the law by relying on its failure to comply with the FLSA's recordkeeping requirements. It asks the Court to pretend it had prohibited overtime work, pretend it had faithfully tracked time as required by the law, and pretend that Merritt concealed his hours by failing to report them to its make-believe

---

[113] ROA.11506.

[114] ROA.11506–11507.

[115] *See, e.g.,* ROA.15256.

timekeeping system. Then it asks, "why didn't Merritt tell us he was working overtime?" But in truth, Farm Bureau freely allowed Merritt to work as much as he wished, made no effort to track or record his time, and misrepresented to Merritt that he was an exempt independent contractor who was not entitled to overtime. Farm Bureau seeks an Alice in Wonderland inversion of the responsibilities under the Act. This Court should refuse and hold that an employee's duty is to comply with an employer's timekeeping system. And that an employee doesn't waive his right to overtime by failing to notify an employer (who fails to even attempt to comply with the FLSA) about his hours—when the employer already has a nondelegable duty to know them.

### d. The jury charge improperly instructed the jury that Merritt owed a duty to notify his employer of overtime.

The court should have granted judgment as a matter of law to Merritt on the undisputed facts. But when it did not, it compounded its error by instructing the jury that Merritt owed the non-existent duty to "notify" his employer of overtime worked. The charge improperly instructed the jury that Merritt had a duty to notify Farm Bureau he was working overtime to establish either actual or constructive

57

knowledge.[116] And Farm Bureau pounced on the error, hammering throughout its entire closing argument how Merritt never notified it he was working overtime and that under the charge that means it did not have actual or constructive knowledge.[117] And specifically that Merritt "breached his duty. He's breached his obligation."[118]

This instruction was particularly prejudicial because the charge laid out that instruction *twice* in both the instruction on actual knowledge and the instruction on constructive knowledge.[119] This doubling elevated the importance of the incorrect law that Merritt owed a duty to notify Farm Bureau he worked overtime—only magnifying the prejudice.

---

[116] ROA.6609–6610.

[117] *See, e.g.* ROA.7553–7554 (pp. 52:25–53:11) ("An employee has a duty to notify his employer. Again, those are Judge Gilliland's instructions to you on what the law is. When he is working extra hours, if the employee fails to notify the employer of the overtime work, the employer's failure to pay the overtime hours is not a violation of the FLSA. He's breached his duty. He's breached his obligation. That's what the evidence in this case has shown.").

[118] ROA.7554.

[119] ROA.6609–6610.

The charge is particularly misleading because it defined constructive knowledge as requiring the employee to notify the employer he worked overtime.[120] In other words, the charge defined *constructive knowledge* as *actual knowledge plus specific notice by the employee*. Under that charge, the only way an employer has constructive knowledge of overtime is by actually knowing overtime was performed because the worker told the employer he was working overtime. This eviscerates the entire concept of *constructive* knowledge. The jury was thus misguided in its deliberations and likely would've reached a different outcome had Merritt's objections to this part of the charge been sustained.

But the Court need not ponder that outcome long because as a matter of law, Farm Bureau had constructive knowledge of Merritt's overtime.

---

[120] ROA.6609–6610 ("Constructive knowledge exists if an employer exercising reasonable diligence would become aware that an employee is working overtime. But if the employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of the FLSA.").

Because it did, the Court can hold that Farm Bureau "employed" Merritt on this basis as well. And the trial court's judgment should be reversed.

**2.  Under the FLSA, Merritt is entitled to overtime pay of "not less than one and one-half times" his regular rate of pay.**

The trial court also erred in holding on summary judgment that Merritt is only entitled to a .5x multiplier instead of a 1.5x multiplier for calculating his overtime damages. The lower court based its holding on regulations that apply a .5x multiplier to certain types of commission earnings. In doing so, the trial court misapplied the regulatory framework that determines whether the multiplier should be .5x or 1.5x.

The Labor Code has a section that outlines how overtime should be compensated. 29 C.F.R. § 778. Section 778 sets for both the general rule and a series of rules to use in specifically enumerated situations. The "general overtime pay standard in section 7(a) requires that overtime must be compensated *at a rate not less than one and one-half times the regular rate* at which the employee is actually employed." 29 C.F.R. § 778.107 (emphasis added). This is the General Rule. The

Regular Rate is determined per hour, and as discussed more fully below, includes commissions. *See* 29 C.F.R. 778.109, 117.

The General Rule requiring an overtime rate of 1.5x controls unless another regulation for limited situations applies. *See Dacar v. Saybolt, L.P.*, 914 F.3d 917, 930–31 (5th Cir. 2018) (recognizing that the "usual method of calculating overtime pay" requires an overtime rate of one and one-half times the regular rate and that a half-time rate applies only when a specific regulation requires a half-time method—at there, the FWW regulation).

After establishing the General Rule and providing the basic methods for determining the Regular Rate, Section 778 provides guidance on situations without standard hourly pay. For example, there are specific provisions for dealing with pieceworkers,[121] day and job rates,[122] salaried employees (generally),[123] fluctuating workweeks,[124]

---

[121] 29 C.F.R. § 778.111.

[122] 29 C.F.R. § 778.112.

[123] 29 C.F.R. § 778.113.

[124] 29 C.F.R. § 778.114.

commission employees (generally),[125] commissions paid on a workweek basis,[126] and deferred commission payments.[127]  Some—but not all—of those provisions expressly state that the overtime rate is .5x rather than the General Rule of 1.5x. That is, the provisions dealing with pieceworkers,[128] day and job rates,[129] fluctuating workweeks,[130] commissions paid on a workweek basis,[131] and deferred commission payments[132] all calculate overtime at .5x.

Importantly, employees receiving commissions that are *not* paid weekly or are *not* deferred do not fit into the limited circumstances outside the General Rule. Indeed, nothing in the plain language of § 778.117 ("**Commission payments – general**") limits overtime to less

---

[125] 29 C.F.R. § 778.117.

[126] 29 C.F.R. § 778.118.

[127] 29 C.F.R. § 778.119–120.

[128] 29 C.F.R. § 778.111.

[129] 29 C.F.R. § 778.112.

[130] 29 C.F.R. § 778.114.

[131] 29 C.F.R. § 778.118.

[132] 29 C.F.R. § 778.119–120.

than the General Rule. If it did, the regulations for commissions paid on a workweek basis[133] and deferred commission payments[134] would be pointless. In other words, the General Rule of 1.5x applies to commissions unless those commissions are paid *weekly* or are *deferred*.

That's where the trial court erred in its analysis. The trial court relied on § 778.118 and § 778.120 to argue that Merritt's overtime rate is .5x. But by their plain language, neither section applies. After all, § 778.118 addresses commissions that are paid on a weekly basis. And § 778.120 addresses commissions that are paid on a deferred basis.

This is confirmed by rules for construing regulations. The first step in construing a statute or regulation "is to determine whether the language at issue has a plane and unambiguous meaning with regard to the particular dispute in the case." *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002) (citing to *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, (1997)); *see also Roberto v. Dep't of Navy*, 440 F.3d 1341, 1350 (Fed. Cir. 2006) ("The rules of statutory construction apply when

---

[133] 29 C.F.R. § 778.118.

[134] 29 C.F.R. § 778.119–120.

interpreting an agency regulation. *Wronke v. Marsh,* 787 F.2d 1569, 1574 (Fed. Cir. 1986)). Then, "the inquiry ceases 'if the statutory language is unambiguous and the statutory scheme is coherent and consistent.'" *Barnhart, Inc.*, 534 U.S. at 450.

Here, the plain language is unambiguous, and the statutory scheme is coherent and consistent. Section 778.118 by its terms only addresses commissions paid weekly, yet the undisputed evidence establishes that Merritt's commissions were paid monthly. *Barnhart, Inc.*, 534 U.S. at 450.

Similarly, § 778.119 (titled "**Deferred commission payments— general rules**") and § 778.120 (titled **"Deferred commission payments not identifiable as earned in particular workweeks"**) sets forth the rules for addressing *deferred* commissions. Indeed, § 778.119's opening sentence expressly limits its application to when "the calculation and payment of the commission cannot be completed until sometime after the regular pay day for the workweek"—i.e., *deferred*. When there is a deferred commission, § 778.119 provides the *general rule* that "[t]o compute this additional overtime compensation, it is

necessary, ***as a general rule***, that the commission be apportioned back over the workweeks of the period during which it was earned." 29 C.F.R. 778.119 (emphasis added). Then § 778.120 provides the *exception* to this general rule when the method for calculating overtime on deferred commissions in § 778.119 is not possible or practicable: "[i]f it is not possible or practicable to allocate the commission among the workweeks of the period in proportion to the amount of commission actually earned or reasonably presumed to be earned each week….".[135] But either way, § 778.119 and § 778.120 only apply to *deferred* commissions.

Yet Merritt did not receive commissions that were deferred. Deferred commissions occur when the employee isn't paid his commissions until *after* the next regular payday. This occurs when commissions are earned in one period but paid on a delayed basis in

---

[135] *Compare* 29 C.F.R. 778.119 ("[t]o compute this additional overtime compensation, it is necessary, ***as a general rule***, that the commission be apportioned back over the workweeks of the period during which it was earned.") (emphasis supplied) *with* 29 C.F.R. 778.120 ("[i]f it is not possible or practicable to allocate the commission among the workweeks of the period in proportion to the amount of commission actually earned or reasonably presumed to be earned each week….").

another. For example, in *Schwind v. EW & Associates, Inc.*, the evidence showed the plaintiff "worked solely on a commission and was paid only after defendants were paid by their customers," which in that case, caused the plaintiff to receive his commissions on a "fluctuating and irregular schedule." 371 F. Supp. 2d 560, 568 (S.D.N.Y. 2005).

Likewise, in a recent case addressing overtime on deferred commissions, the federal district court in Utah highlighted that the plaintiff received his commission only after the customers paid the defendant—even though he was entitled to the commission when he sold a job. *Clyde v. My Buddy Plumber Heating & Air, LLC*, No. 219CV00756JNPCMR, 2021 WL 778533, at *1 (D. Utah Mar. 1, 2021). Some of the plaintiff's customers "would take weeks or months to complete their payments. *Id.* That caused a scenario where "the commissions reflected on Clyde's paychecks rarely reflected the commissions that Clyde made during the same pay period. The delayed commission structure provided for substantial fluctuation in Clyde's bi-weekly earnings . . . ." *Id.*

66

Merritt's commissions were not deferred like in *Schwind* and *Clyde*. Rather, they were paid the next regular payday after a policy was issued or renewed.[136] There's no evidence or argument that Merritt's monthly payment did not reflect the commissions he earned during the pay period. So § 778.119 and § 778.120 don't apply here.

And because Merritt's pay doesn't fit into any exception to the General Rule requiring a 1.5x multiplier, the trial court erred in holding on summary judgment that the .5x multiplier applied instead. This Court can and should reverse that error.

## CONCLUSION

For these reasons, this Court should *reverse* the trial court's judgment, *render* that Farm Bureau violated the Fair Labor Standards Act, and *remand* this case to the trial court to enter a final judgment consistent with the Court's decision.

---

[136] *See* ROA.611–612 (pp. 156:16–159:17); ROA.1723 (pp. 215:6–216:24); ROA.2143 (pp. 39:11–40:20); ROA.2209 (pp. 127:17–25); ROA.569 (¶ 26).

Respectfully submitted,

*/s/ Avi Moshenberg*

Avi Moshenberg
avi.moshenberg@lmbusinesslaw.com
Nick Lawson
nick.lawson@lmbusinesslaw.com
Lawson & Moshenberg PLLC
801 Travis Street, Suite 2101 #838
Houston, TX 77002
Telephone: (832) 280-5670

***Attorneys for Plaintiff –***
***Appellant/Cross–Appellee***
***Jerry Merritt***

## CERTIFICATE OF SERVICE

I certify that on January 31, 2025, a copy of the foregoing was filed electronically with the Clerk of the Court using the Court's ECF System. Notice of this filing will be sent electronically by operation of the Court's electronic-filing system to all counsel of record who have appeared.

*/s/ Avi Moshenberg*
Avi Moshenberg

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of FED. R. APP. P. 32(A)(7)(B) because:

- it contains 12,320 words, excluding the parts exempted by FED. R. APP. P. 32(f).

2.     This brief also complies with the typeface and type-style requirements of FED. R. APP. P. 32(A)(5) and the type requirements of FED. R. APP. P. 32(A)(6) because:

- this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Avi Moshenberg*
Avi Moshenberg