## No. 24-50127

# In the United States Court of Appeals for the Fifth Circuit

---

Jerry Merritt

*Plaintiff – Appellant/Cross-Appellee,*

v.

Texas Farm Bureau; Texas Farm Bureau Business Corporation; Texas Farm Bureau Casualty Insurance Company; Texas Farm Bureau Mutual Insurance Company; Texas Farm Bureau Underwriters; Farm Bureau County Mutual Insurance Company of Texas; Southern Farm Bureau Life Insurance Company,

*Defendants – Appellees/Cross-Appellants.*

---

On Appeal from the United States District Court
for the Western District of Texas, Waco Division
Civil Action No. 6:19-cv-00679

---

## BRIEF OF APPELLEES/CROSS-APPELLANTS

---

Barry A. Moscowitz
Cassie J. Dallas
Leslie W. Richardson
THOMPSON, COE, COUSINS
  & IRONS, L.L.P.
700 North Pearl Street, Suite 2500
Dallas, Texas 75201-2832
(214) 871-8200

Markham R. Leventhal
Scott Abeles
CARLTON FIELDS, P.A.
Suite 400 West
1025 Thomas Jefferson Street, NW
Washington, DC 20007
(202) 965-8189

*Counsel for Appellees/Cross Appellants*
(additional counsel in signature block)

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certify that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**(1)    Plaintiff–Appellant/Cross-Appellee:**

Jerry Merritt

**(2)    Defendants–Appellees/Cross-Appellants:**

Texas Farm Bureau
Texas Farm Bureau Business Corporation
Texas Farm Bureau Casualty Insurance Company
Texas Farm Bureau Mutual Insurance Company
Texas Farm Bureau Underwriters
Farm Bureau County Mutual Insurance Company of Texas
Southern Farm Bureau Life Insurance Company

**(3)    Defendant–Appellee/Cross Appellant Southern Farm Bureau Life Insurance Company is owned equally by the following ten investment corporations or holding companies of the Farm Bureau Federations in ten states, each of which owns a 10% share:**

Arkansas Farm Bureau Investment Corporation
Florida Farm Bureau Holding Corporation
Georgia Farm Bureau Holding Corporation
Kentucky Farm Bureau Investment Corporation
Louisiana Farm Bureau Investment Corporation
Mississippi Farm Bureau Investment Corporation
North Carolina Farm Bureau Investment Corporation
South Carolina Farm Bureau Investment Corporation
Texas Farm Bureau Investment Corporation
Virginia Farm Bureau Holding Corporation

**(4)     Counsel for Plaintiff–Appellant/Cross-Appellee Jerry Merritt:**

Avi Moshenberg
Nicholas R. Lawson
Lawson & Moshenberg PLLC

William B. Thomas
McDowell Hetherington LLP

Kelly E. Cook
Warren A. Berlanga
Wyly & Cook, PLLC

John Eddie Williams, Jr.
Brian A. Abramson
Sean McCarthy
Williams Hart Boundas, LLP

**(5)     Counsel for Defendants–Appellees/Cross-Appellants Texas Farm Bureau Defendants:**

Barry A. Moscowitz
Leslie W. Richardson
Cassie J. Dallas
Thompson, Coe, Cousins & Irons, L.L.P.

**(6)     Counsel for Defendant–Appellee/Cross-Appellant Southern Farm Life Bureau Life Insurance Company**

Markham R. Leventhal
Scott Abeles
Cathleen Bell Bremmer
Aaron S. Weiss
Irma Reboso Solares
Stephanie A. Fichera
Carlton Fields, P.A.

/s/ *Barry A. Moscowitz*

Attorney of record for
Appellees/Cross-Appellants
Texas Farm Bureau Defendants

/s/ *Markham R. Leventhal*

Attorney of record for
Appellee/Cross-Appellant
Southern Farm Bureau Life Insurance
Company

## STATEMENT REGARDING ORAL ARGUMENT

This appeal involves a jury verdict that rejected a single plaintiff's claim for overtime compensation under the Fair Labor Standards Act (the "FLSA"). Jerry Merritt, the appellant and cross-appellee, challenges well-established Fifth Circuit precedent under the FLSA and a pattern jury instruction grounded in settled authority. His appeal raises no difficult issues requiring oral argument. If this Court finds it necessary to address the appellees' conditional cross-appeal, or the Court determines that oral argument would otherwise be helpful in resolving the issues presented, the appellees would be glad to participate.

# **TABLE OF CONTENTS**

*Page*

CERTIFICATE OF INTERESTED PERSONS ........................................ i

STATEMENT REGARDING ORAL ARGUMENT ........................... iv

TABLE OF CONTENTS ...................................................................... v

TABLE OF AUTHORITIES .................................................................x

JURISDICTIONAL STATEMENT .................................................. xviii

STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................1

    A.    Merritt's Appeal ...............................................................1

    B.    The Companies' Conditional Cross-Appeal ........................1

INTRODUCTION ..............................................................................3

STATEMENT OF THE CASE.............................................................4

SUMMARY OF ARGUMENT ...........................................................13

ARGUMENT ....................................................................................15

I.    THE COURT SHOULD AFFIRM THE JURY'S VERDICT AND THE DISTRICT COURT'S DENIAL OF MERRITT'S MOTION FOR JUDGMENT AS A MATTER OF LAW .......................................15

    A.    The District Court Correctly Applied This Court's Precedents And Pattern Jury Instructions Regarding Knowledge Of Overtime .........................................................................16

    B.    The Court Should Reject Merritt's Novel Contention That An FLSA Plaintiff Need Not Prove Actual or Constructive Knowledge.......................................................................18

# TABLE OF CONTENTS
(continued)

*Page*

    1.    Merritt has waived this argument ............................................19

    2.    If not waived, the court should reject this argument ................20

C.    The Court Should Reject Merritt's Conflation Of The FLSA's Notice Requirements With Its Record-Keeping Requirements ..........23

D.    Sufficient Evidence Supports The Verdict, And Merritt Has Waived Any Argument To The Contrary ............................................27

II.    THE COURT SHOULD AFFIRM THE DISTRICT COURT'S GRANT OF PARTIAL SUMMARY JUDGMENT TO THE COMPANIES ON USE OF A HALF-TIME MULTIPLIER ......................29

A.    FLSA Regulations Provide Express Guidance On Overtime Calculations For Workers Like Merritt .................................................29

B.    The "Deferred Commission Payments" Regulations Apply To Merritt's Monthly Commissions ...........................................................31

C.    Merritt's Argument That His Commissions Were Not "Deferred" Is Wrong ....................................................................................................33

THE COMPANIES' CONDITIONAL CROSS-APPEAL ......................................35

III.    THE COURT SHOULD REVERSE THE DISTRICT COURT'S DENIAL OF SUMMARY JUDGMENT TO THE COMPANIES BASED ON THE "COMMISSION EXEMPTION," AND VACATE THE DECISION GRANTING SUMMARY JUDGMENT TO MERRITT ....................................................................................................................35

A.    Section 207(i) Applies To Any "Employer"; It Does Not Exclude The Insurance Industry Or Any Other Industry From Its Scope ........36

B.    The DOL's 2020 Rule Similarly Makes Clear That The Commission Exemption Is Available To All Industries ......................38

**TABLE OF CONTENTS**
(continued)

*Page*

C. Merritt's Agencies, And His Compensation, Satisfied All Requirements Of Section 207(i).............................................39

    1. Merritt did not contest two of the three requirements for the commission exemption .......................................39

    2. Merritt's Agencies were "retail or service establishments" .................................................................40

D. The District Court Erred In Analyzing Section 207(i).......................42

    1. The district court incorrectly found *Mitchell* "controlling" .................................................................42

    2. The district court's reliance on 29 C.F.R. §779.414 to exclude the insurance industry from Section 207(i) was error ........................................................44

    3. The district court's reliance on 29 C.F.R. §779.316 to exclude the insurance industry from Section 207(i) was error ........................................................45

IV. THE COURT SHOULD REVERSE THE DISTRICT COURT'S DENIAL OF SUMMARY JUDGMENT TO THE COMPANIES BASED ON THE ADMINISTRATIVE, HIGHLY-COMPENSATED, AND EXECUTIVE EXEMPTIONS...........................................47

A. The Undisputed Evidence Showed That Merritt Provided Services In A Highly Compensated, Administrative, And Executive Capacity.............................................47

B. Merritt's Compensation Satisfied The Requirements Of The Salary Basis Test .................................................49

# TABLE OF CONTENTS
(continued)

*Page*

C.  The District Court Erred In Denying The EAP Exemptions Based On The Conclusion That Merritt Did Not Satisfy The Salary Basis Test ........................................................................................51

D.  If The District Court's Interpretation Of The Salary Basis Test Is Correct, The Test Is Invalid And Cannot Be Enforced......................53

V.  THE COURT SHOULD VACATE THE DISTRICT COURT'S DECISION GRANTING SUMMARY JUDGMENT TO MERRITT, AND DENYING SUMMARY JUDGMENT TO THE COMPANIES, ON "EMPLOYEE STATUS" ....................................................................56

A.  *Hopkins* And *Ferguson* Do Not Control The Outcome .....................58

B.  The Control Factor Favors Independent Contractor Status Where Merritt Controlled The Manner And Method Of His Work ..............60

    1.  Merritt controlled the manner and method of the work............60

    2.  The Companies' compliance with insurance regulatory requirements is not indicia of relevant "control"......................62

    3.  Merritt controlled scheduling, recruiting, training, and staffing ....................................................................................63

C.  Merritt Controlled His Opportunity For Profit Or Loss......................65

D.  The Court Erred In Concluding That The Relative Investment Factor Favored Independent Contractor Status....................................67

E.  Merritt Was A Licensed Insurance Professional Whose Skill And Initiative Showed He Was An Independent Contractor......................68

F.  The Permanency And Integrality Factors Should Not Have Tipped The Balance To Employee Status............................................68

# **TABLE OF CONTENTS**
(continued)

*Page*

CONCLUSION ...................................................................................................70

CERTIFICATE OF SERVICE ..........................................................................72

CERTIFICATE OF COMPLIANCE ..................................................................73

# TABLE OF AUTHORITIES

**Page**

## Cases

*Adkins v. Silverman,*
    899 F.3d 395 (5th Cir. 2018) ............................................................44

*Akins v. Worley Catastrophe Response, LLC,*
    2013 WL 1907486 (E.D. La. May 8, 2013) ...................................49

*Alston v. DIRECTV, Inc.,*
    254 F. Supp. 3d 765 (D.S.C. 2017) ...................................18, 21, 26

*Alvarado v. Corporate Cleaning Services, Inc.,*
    782 F.3d 365 (7th Cir. 2015) ............................................35, 43, 46

*Anderson v. Mt. Clemens Pottery Co.,*
    328 U.S. 680 (1946)......................................................................18

*Brennan v. General Motors Acceptance Corp.,*
    482 F.2d 825 (5th Cir. 1973) ......................................17, 23, 24, 25

*Brennan v. Lauderdale Yacht Basin, Inc.,*
    493 F.2d 188 (5th Cir. 1974) ...................................................30, 31

*Brock v. Mr. W Fireworks, Inc.,*
    814 F.2d 1042 (5th Cir. 1987) .....................................................56

*Burden v. SelectQuote Insurance Services,*
    848 F. Supp. 2d 1075 (N.D. Cal. 2012)........................................44

*Butts v. Commissioner of Internal Revenue,*
    1993 WL 410704 (T.C. Oct. 18, 1993), *aff'd*, 49 F.3d 713 (11th
    Cir. 1995)......................................................................................66

*Carrell v. Sunland Construction, Inc.,*
    998 F.2d 330 (5th Cir. 1993) ............................................59, 61, 66

# TABLE OF AUTHORITIES
(continued)

*Page*

*Celanese Corp. v. Martin K. Eby Construction Co.*,
   620 F.3d 529 (5th Cir. 2010) ........................................................................20

*Chao v. Gotham Registry, Inc.*,
   514 F.3d 280 (2d Cir. 2008) ...............................................................16, 21

*Christopher v. SmithKline Beecham Corp.*,
   567 U.S. 142 (2012)........................................................................37, 54, 55

*Clyde v. My Buddy Plumber Heating & Air, LLC*,
   2021 WL 778533 (D. Utah Mar. 1, 2021)....................................................34

*Connecticut National Bank v. Germain*,
   503 U.S. 249 (1992)......................................................................................37

*Daskam v. Allstate Corp.*,
   2012 WL 4420069 (W.D. Wash. Sept. 24, 2012) .......................................66

*Davis v. Food Lion*,
   792 F.2d 1274 (4th Cir. 1986) ...............................................................21, 25

*Duval v. Northern Assurance Co. of America*,
   722 F.3d 300 (5th Cir. 2013) .......................................................................58

*Encino Motorcars, LLC v. Navarro*,
   584 U.S. 79 (2018).......................................................................................44

*Fairchild v. All American Check Cashing, Inc.*,
   815 F.3d 959 (5th Cir. 2016) ...............................................................20, 22

*Ferguson v. Texas Farm Bureau Business Corp.*,
   2021 WL 2349340 (W.D. Tex. May 19, 2021),
   *adopted* 2021 WL 7906826 (W.D. Tex. June 22, 2021) .............................56

*Flores v. FS Blinds, L.L.C.*,
   73 F.4th 356 (5th Cir. 2023) ........................................................................69

# TABLE OF AUTHORITIES

(continued)

<u>Page</u>

*Florida Department of Revenue v. Piccadilly Cafeterias, Inc.*,
   554 U.S. 33 (2008)................................................................................33

*Forrester v. Roth's I.G.A. Foodliner, Inc.*,
   646 F.2d 413 (9th Cir. 1981) ...............................................................24

*Godert v. Palo Alto Networks, Inc.*,
   2017 WL 5901003 (N.D. Tex. Nov. 30, 2017) .............................................26

*Gray v. Killick Group, LLC*,
   113 F.4th 543 (5th Cir. 2024) ...........................................................67

*Gulf King Shrimp Co. v. Wirtz*,
   407 F.2d 508 (5th Cir. 1969) ...........................................................24

*Harvill v. Westward Communications, L.L.C.*,
   433 F.3d 428 (5th Cir.2005) ...................................................17, 20

*Helix Energy Solutions Group, Inc. v. Hewitt*,
   598 U.S. 39 (2023)...........................................................51, 52, 53, 54

*Hickey v Arkla Industries, Inc.*,
   699 F.2d 748 (5th Cir. 1983) ...................................................61, 65

*Hogan v. Allstate Insurance Co.*,
   361 F.3d 621 (11th Cir. 2004) .......................................................44

*Hopkins v. Cornerstone America*,
   545 F.3d 338 (5th Cir. 2008) ...................................................56, 58

*Iontchev* v. *AAA Cab Service, Inc.*,
   685 F. App'x 548 (9th Cir. 2017) ...................................................68

*Jacobs v. National Drug Intelligence Center*,
   548 F.3d 375 (5th Cir. 2008) .......................................................22

# TABLE OF AUTHORITIES

(continued)

*Page*

*Mallard v. United States District Court for the Southern District of
    Iowa*,
    490 U.S. 296 (1989)........................................................................37

*Mayfield v. United States Department of Labor*,
    117 F.4th 611 (5th Cir. 2024) ........................................................53

*Estate of Miranda v. Navistar, Inc.*,
    23 F.4th 500 (5th Cir. 2022) ..........................................................55

*Mitchell v. Kentucky Finance Co.*,
    359 U.S. 290 (1959)............................................................42, 43, 44

*Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State
    Farm Mutual Automobile Insurance Co.*,
    463 U.S. 29 (1983)..........................................................................34

*Newton v. City of Henderson*,
    47 F.3d 746 (5th Cir.1995) ...............................................16, 20, 28

*Oestman v. National Farmers Union Insurance Co.*,
    958 F.2d 303 (10th Cir. 1992) ........................................................63

*Parks v. Eastwood Insurance Services, Inc.*,
    2003 WL 25682287 (C.D. Cal. Feb. 24, 2003) ..............................44

*Parrish v. Premier Directional Drilling, L.P.*,
    917 F.3d 369 (5th Cir. 2019) ......................... 56, 60, 61, 63, 66, 68

*Raczkowski v. TC Construction Co.*,
    8 F.3d 29 (9th Cir. 1993), (Merritt Br. ) .......................................25

*Russello v. United States*,
    464 U.S. 16 (1983)..........................................................................37

# TABLE OF AUTHORITIES
(continued)

*Page*

*Rutherford Food Corp. v. McComb*,
    331 U.S. 722 (1947)....................................................................19

*Scantland v. Jeffry Knight, Inc.*,
    721 F.3d 1308 (11th Cir. 2013) ....................................................60

*Schwieger v. Farm Bureau Insurance Co. of Nebraska*,
    207 F.3d 480 (8th Cir. 2000) .........................................................67

*Schwind v. EW & Associates, Inc.*,
    371 F. Supp. 2d 560 (E.D. Tex. 2013) .........................................34

*Seibert v. Jackson County, Mississippi*,
    851 F.3d 430 (5th Cir. 2017) .........................................................27

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944).......................................................................45

*Talbert v. American Risk Insurance Co.*,
    405 F. App'x 848 (5th Cir. 2010)..................................................59

*Taylor v. HD & Associates, L.L.C.*,
    45 F.4th 833 (5th Cir. 2022) ..........................................................35

*Thibault v. Bellsouth Telecommunications, Inc.*,
    612 F.3d 843 (5th Cir. 2010) ..................................................56, 61

*Threlkeld v. Total Petroleum, Inc.*,
    211 F.3d 887 (5th Cir. 2000) ..................................................27, 28

*United States Department of Labor v. Five Star Automatic Fire
    Protection*,
    L.L.C., 987 F.3d 436 (5th Cir. 2021) ............................................25

*United States v. Jimenez*,
    509 F.3d 682 (5th Cir. 2007) .........................................................27

# TABLE OF AUTHORITIES
(continued)

*Page*

*United States v. Whitfield*,
   590 F.3d 325 (5th Cir. 2009) .......................................................................22

*Von Friewalde v. Boeing Aerospace Operations, Inc.*,
   339 F. App'x 448 (5th Cir. 2009).....................................................16, 20, 26

*Walling v. Jacksonville Terminal Co.*,
   148 F.2d 768 (5th Cir. 1945) ..................................................................18, 21

*White v. Patriot Erectors, L.L.C.*,
   2024 WL 3181455 (5th Cir. June 26, 2024) (Merritt Br. 53-54) .................25

*Wirtz v. Bledsoe*,
   365 F.2d 277 (10th Cir. 1966) .......................................................................25

*Yoder v. Florida Farm Bureau*,
   2023 WL 3151107 (11th Cir. Apr. 28, 2023)................................................67

*Yoder v. Florida Farm Bureau Casualty Insurance Co.*,
   2022 WL 1055184 (N.D. Fla. Mar. 9, 2022)),
   *aff'd* 2023 WL 3151107 (11th Cir. 2023) ............... 57, 59, 61, 63, 64, 66, 67

*Young v. Board of Supervisors of Humphreys County, Mississippi*,
   927 F.3d 898 (5th Cir. 2019) .........................................................................27

## Statutes

28 U.S.C.
   § 1291 ............................................................................................... xviii
   § 1331 ............................................................................................... xviii

29 U.S.C.
   § 203 ...................................................................................................36
   § 207 ............................................................................... xviii, 5, 36, 37
   § 213 ...............................................................5, 14, 47, 53, 54
   § 216 ................................................................................................. xviii

# TABLE OF AUTHORITIES
(continued)

*Page*

Texas Administrative Code
    § 21.116 ...............................................................................................62
    § 21.122 ...............................................................................................62

Texas Insurance Code
    § 541.051 .............................................................................................62
    § 541.052 .............................................................................................62
    § 541.061 .............................................................................................62
    § 4001.201 ...........................................................................................62

## Regulations

29 C.F.R.
    § 541.200 .............................................................................................47
    § 541.600 .........................................................................................47, 49
    § 541.601 .........................................................................................48, 49
    § 541.602 .............................................................................................49
    § 776.20 ...............................................................................................36
    § 778.109 .............................................................................................29
    §§ 778.111-778.122 .............................................................................29
    § 778.117 .............................................................................................30
    § 778.118 .............................................................................................30
    § 778.119 .........................................................................................31, 32
    § 778.120 .....................................................................................31, 32, 34
    § 779.23 ...............................................................................................40
    § 779.303 .............................................................................................40
    § 779.316 .........................................................................................45, 46
    § 779.317 .............................................................................................38
    § 779.318 .............................................................................................46
    § 779.414 .........................................................................................44, 45

## Rules

Federal Rule of Civil Procedure 50 ...............................................5, 13, 27

Federal Rule of Civil Procedure 56 .......................................................51

## TABLE OF AUTHORITIES
(continued)

*Page*

**Other Authorities**

35 Fed Reg. 5,856 ..........................................................................46

69 Fed. Reg. 22,260, *et seq.* (April 23, 2004)..........................................47

84 Fed. Reg. 51,307 (Sept. 27, 2019) ......................................47

85 Fed. Reg. 29,867 .................................................36, 38, 45

*Britannica Dictionary*, available at https://www.britannica.com/..........................42

*Merriam-Webster*, available at https://www.merriam-webster.com/dictionary/ ..................................42

Pub. L. 87-30, §6(g)................................................................42

WHD Opinion Letter FLSA2021-6 ..........................................39

# JURISDICTIONAL STATEMENT

Plaintiff-Appellant Jerry Merritt's Complaint alleged a violation of sections 207 and 216(b) of the Fair Labor Standards Act, 29 U.S.C. §§207, 216(b). ROA.59 ¶1; ROA.74 ¶88.  Jurisdiction was based on a federal question pursuant to 28 U.S.C. §1331.  ROA.59 ¶1.  On June 14, 2023, the court entered Final Judgment (ROA.6617-18) based on a jury verdict in favor of the Defendant-Companies. ROA.6616.  On February 21, 2024, Merritt filed a premature Notice of Appeal (ROA.11127-29), and on May 8, 2024, this Court stayed the proceedings pending the trial court's rulings on Merritt's Rule 50 and 59 motions.  On October 11, 2024, the court entered a written order denying Merritt's Rule 50 and 59 motions, and on October 21, 2024, this Court issued an order to resume briefing.  Merritt is appealing a final order of the court.  ROA.15243-60.  Jurisdiction in this Court is based on 28 U.S.C. §1291.

## <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

### A.     Merritt's Appeal

1.     Whether Merritt was required to establish that the Companies had actual or constructive knowledge that he worked overtime.

2.     Whether Merritt has waived the argument that an FLSA plaintiff need not prove the employer's actual or constructive knowledge of overtime.

3.     Whether the constructive knowledge requirement is satisfied merely by showing an employee worked overtime and the employer did not keep time records.

4.     Whether the jury's verdict was supported by sufficient evidence, and whether Merritt has waived any argument to the contrary.

5.     Whether Department of Labor regulations provide for a 0.5 multiplier, or a 1.5 multiplier, for workers who earn commissions and are paid monthly.

### B.     The Companies' Conditional Cross-Appeal

6.     Whether the court erred in denying the Companies' motion for summary judgment, and granting Merritt's, based on the "commission" exemption in Section 207(i) of the FLSA, because insurance agencies are not eligible for the commission exemption as matter of law.

7.     Whether the court erred in holding as a matter of law that application of the Department of Labor's "salary basis test" disqualified Merritt from the administrative, executive, and highly compensated exemptions, despite (i) his

earning in excess of $500,000 annually; and (ii) undisputed facts showing his compensation was guaranteed to far exceed the required "salary basis" minimum, and did in fact exceed that minimum by more than ten-fold in every month during the relevant time period.

8.     Whether the court erred in denying the Companies' motion for summary judgment on grounds that Merritt was properly classified as an independent contractor as a matter of law.

9.     Whether the court erred by resolving disputed issues of material fact against the Companies and granting partial summary judgment holding that Merritt was an "employee" and not an independent contractor as a matter of law.

## **INTRODUCTION**

This case involves a claim for overtime under the FLSA that never should have been filed.  The plaintiff, Jerry Merritt ("Merritt"), contracted as an insurance agency manager with the Texas Farm Bureau insurance companies ("TFB")[1] and Southern Farm Bureau Life Insurance Company ("SFB Life") (collectively, the "Companies") to manage agencies in Brazos and Grimes Counties.  As an agency manager, Merritt received compensation on every policy sold or renewed in his agencies, including those sold by agents.[2]  Because policy renewal rates exceed 90%, Merritt was guaranteed a substantial six-figure income regardless of whether he sold any policies or did any work himself.  ROA.2694.  From 2016 to 2018, he earned between $552,000 and $627,000 annually.[3]

Merritt agreed to operate as an independent contractor, free to manage his agencies without daily supervision.[4]  He set his own schedule and determined when, where, and how many hours he worked, if any.[5]  He did not need to (and did not)

---

[1] "TFB" includes Texas Farm Bureau Casualty Insurance Company, Texas Farm Bureau Mutual Insurance Company, Texas Farm Bureau Underwriters, and Farm Bureau County Mutual Insurance Company of Texas.

[2] ROA.2683, 2692.

[3] ROA.2828, 2834.

[4] ROA.15253 (court noting that the jury "heard testimony that none of Defendants supervised Plaintiff's daily tasks and work hours").

[5] ROA.15245, 11472, 11475, 11498, 11504, 11539.

inform the Companies of his schedule.[6]  He had unlimited time off and did not need

permission to take it.[7]  He did not have to (and did not) track or disclose the hours

he worked to the Companies.[8]  There was no hours obligation in his contracts

(ROA.15245), and his compensation did not depend on hours worked.[9]

Summary judgment practice left a single issue for trial—whether the

Companies had actual or constructive knowledge that Merritt worked overtime.  To

guide the jury, the court used this Court's pattern instructions.  Over three days, the

jury heard overwhelming evidence that the Companies lacked actual or constructive

notice and, if anything, Merritt prevented the Companies from obtaining it.  After

retiring briefly, the jury returned a defense verdict.  The court later denied Merritt's

post-trial motions.  ROA.15243-60 (the "Order").

Merritt's appeal provides no reason to overturn the verdict or the Order.

## STATEMENT OF THE CASE

Following a three-day trial, the jury rendered a unanimous verdict finding the

Companies did not have "knowledge, either actual or constructive, that Merritt was

working more than 40 hours in any workweek during the period," and the court

---

[6] ROA.11541-43, 11678-79, 11799-803, 11856-57.

[7] ROA.11678-79, 11799-803, 11856-57, 11541-43.

[8] ROA.11505-06, 11539-41.

[9] ROA.11739, 11504-06.

entered a take-nothing judgment.   ROA.6616, 6617-18.   Merritt challenges the court's denial of his motion for judgment as a matter of law under Federal Rules 50(b) and a pre-trial ruling on the proper overtime multiplier.

Merritt is a former agency manager in Grimes and Brazos Counties.   He filed suit on November 27, 2019, claiming he was misclassified as an independent contractor and owed overtime.   ROA.58-78.   After discovery, the parties sought summary judgment on many issues, including Merritt's status as an employee or independent contractor;[10] the administrative, executive, and highly compensated exemptions (29 U.S.C. §213(a)(1));[11] and the commission exemption (29 U.S.C. §207(i)).[12]   On each of these, the court erroneously ruled against the Companies. ROA.6308-20, 6337-47, 6348-64.   Merritt separately sought partial summary judgment on the number of Merritt's overtime hours.   And the Companies filed motions on the lack of actual and constructive notice of overtime work;[13] and Merritt's improper damages multiplier and claim for prejudgment interest.[14]

---

[10] ROA.3398-429, 2667-71, 13092-434.

[11] ROA.2637-66, 2667-71, 13092-434.

[12] ROA.2598-625, 2626-27, 2667-71, 13092-434.

[13] ROA.3386-97.

[14] ROA.2628-36, 2667-71, 4468-78.

Following the court's resolution of these motions[15] and its entry of an agreed-upon set of stipulations,[16] the sole question for trial was whether Merritt satisfied his burden of demonstrating that the Companies had actual or constructive notice of his overtime work.[17]

The jury heard evidence over two days, with Merritt calling six witnesses—three of the Companies' sales and marketing executives (David Hurt, Sloan Brown, Justin Ingram), two district managers (Gary Wood, Jon Sharp), and himself. The jury heard no evidence that the Companies required, demanded, or expected Merritt to work overtime. Merritt and other witnesses repeatedly testified that Merritt never told anyone the hours he worked.[18] And the Companies' employees testified they did not know or have reason to know Merritt worked overtime.[19]

Merritt repeatedly agreed to be an independent contractor during the relevant period (November 2016 to August 2019), and he enjoyed all the freedom and

---

[15] ROA.6308-20, 6337-47, 6348-64.

[16] ROA.6426-27.

[17] *See* ROA.11328-29, 11334.

[18] *See, e.g.*, ROA.11674, 11667, 11672-73, 11682.

[19] *See, e.g.*, ROA.11854-64, 11971-72, 11796-97, 11810, 11815-16, 11483, 11533-44.

flexibility his agreements provided.[20]  He set his own schedule, controlled his hours, and determined when, where, if, and how much he worked.[21]

TFB's witnesses confirmed the Companies focused on agency production, not on Merritt's hours, daily tasks, or whereabouts.[22]  Merritt did not need to (and did not) inform the Companies of his schedule or hours,[23] or ask for time off, sick leave or vacation time, which was unlimited.[24]  The Companies imposed no hours requirements.[25]  He was paid through commissions on sales of new policies, and renewals of existing policies, including policies sold by current and former agents in his agencies.[26]  His compensation was not tied to his hours worked, and was mainly derived from the work of others.[27]

---

[20] *See* ROA.11694-705, 11731-37, 11677-79, 11846-48, 12246-57, 12258-68, 12269-80, 12281-90.

[21] ROA.11472-76 (hours an AM works is "totally their call"); ROA.11498-500 ("[M]ost people work 40 hours or less .… a lot of people [] are involved in second jobs"); ROA.11504-06, 11538-43 (Merritt controlled his schedule and was not supervised daily); ROA.11854-61.

[22] ROA.11786, 11787-89, 11791-801, 11845, 11541.

[23] ROA.11541-44, 11678-79, 11799-803.

[24] ROA.11678, 11801-03, 11856-58, 11541-44.

[25] ROA.11739, 11504-06.

[26] ROA.11737-39, 11743-46, 11749.

[27] ROA.11739, 11504-06.  During the relevant period, 89% of Merritt's compensation was derived from renewal commissions on existing policies

Merritt never provided the Companies with actual notice that he worked overtime.[28] As he conceded: "I never told anybody I was working overtime."[29] Nor did he inform the Companies that fulfilling his contract obligations required more than 40 hours a week; he never asked the Companies to track his hours, and prior to filing suit, never disputed his classification.[30] Merritt had long-standing relationship with the Companies' employees and countless opportunities to provide notice.[31] But he never did.

Those opportunities included discussions with personnel in Merritt's agencies or at the Companies' home offices in Waco, Texas and Jackson, Mississippi; with TFB personnel on or at social events;[32] when Merritt signed new contracts;[33] when

---

(excluding brokerage business). *See* ROA.2898 ¶¶8, 10 (vast majority of Merritt's income derived from renewals and overwrites (new sales by other agents)).

[28] *See* ROA.11541-42, 11810-12.

[29] ROA.11674, 11667-68, 11672-73, 11854–64, 11791, 11810, 11815-16, 11483.

[30] ROA.11533-37, 11538-42, 11682, 11971-72, 11796-97, 11854, 11858-61, 11863-64.

[31] ROA.11530-31, 11817-18, 11864.

[32] ROA.11728-30, 11854, 11864-65.

[33] ROA.11695-705, 11735-37, 11854, 11538-39.

he announced his retirement;[34] when discussing his post-termination payments;[35] before he filed suit;[36] or otherwise.

Notably, during a discussion at a meeting about the lawsuit filed by Christopher Ferguson, a former agency manager who sued, unsuccessfully, for overtime compensation, Merritt "adamantly disagreed"[37] with Ferguson's contentions, calling them "hogwash."[38] His actions prevented the Companies from learning of his alleged overtime.

Without contradiction, the Companies' witnesses confirmed they did not track Merritt's time or know how many hours he worked at any time, and would not have known.[39] While some witnesses acknowledged he was a "hard work[er]" and conceded it was "possible" he had worked overtime, no witnesses had knowledge or notice he had actually done so.[40]

---

[34] ROA.11533-34.

[35] ROA.11863-64.

[36] ROA.11814-16.

[37] ROA.11818, 11714-16.

[38] ROA.11716, 11517, 11532-33, 12300-03.

[39] ROA.11482-83, 11488-89, 11498-99, 11504 ("[W]e have no idea how many hours a week they are working").

[40] ROA.11778-79, 11841-42, 11846-47, 11759.

As to constructive notice, the evidence showed Merritt's daily tasks and work hours were not supervised.[41] The Companies did not monitor his daily activities or observe him managing the Brazos and Grimes County agencies, far from the Companies' home offices.[42]

Merritt testified he worked an average of 52-58 hours weekly.[43] He put on evidence that he: had incentive to "work a lot of hours";[44] managed a successful agency;[45] earned awards and a favorable designation;[46] had many responsibilities;[47] had activities and communication outside office hours.[48] But he failed to connect how any of this evidence showed the Companies knew of his overtime work.

The Companies' witnesses credibly testified that a successful agency manager's production did not reflect whether he worked overtime,[49] especially when

---

[41] ROA.11495, 11497-500, 11480-82, 11823, 11846-47.

[42] ROA.11512, 11543-44, 11846 ("I was not there to see how many hours he worked ….").

[43] ROA.11662-63.

[44] ROA.11623.

[45] ROA.11620-21, 11643-42.

[46] ROA.11620-21, 11643-42, 11762.

[47] ROA.11625-26, 11629-34, 11636-37, 11648-50, 11653.

[48] *See, e.g.*, ROA.11660, 11662, 11829, 11832-33.

[49] ROA.11474-75, 11488-89, 11500 (time required to perform AM duties "all over the board"); ROA.11507-12, 11521-22, 11525-27.

most of Merritt's income came from the work of agents under him.[50]  The amount of money an agency manager made personally did not mean he worked overtime or reflect any particular number of hours worked.[51]

Merritt also pointed to his submission of documents and sporadic interactions with the Companies.  But he conceded that activities, reports, and communications, even if time-stamped, did not indicate the *amount* of time spent on a given task, how much he worked the rest of the day, or whether the tasks caused him to work overtime in any given workweek.[52]  Nor did he know who received or reviewed any such electronic submissions.  ROA.11727-28.

Other witnesses explained that the activities Merritt flagged did not show he was working overtime.[53]  None of the evidence reflected how many hours Merritt worked in any discreet period of time, or that he had worked, was working, or would work overtime.  Merritt never complained that those activities caused him to work overtime.[54]

---

[50] ROA.11507-08, 11511-12, 11545-47, 11743-44.

[51] ROA.11474-75, 11507-08, 11511-12, 11813-14.

[52] ROA.11674-77, 11686-88.

[53] ROA.11793-97, 11805, 11854-60.

[54] ROA.11854-60, 11674-78, 11686-87.

Once Merritt rested, the Companies moved for judgment as a matter of law, which the Court denied.[55] The Companies rested without putting on additional witnesses, and Merritt moved for judgment, which the Court also denied.[56]

Consistent with Fifth Circuit pattern instruction and precedent, the court charged the jury, in relevant part, as follows:

> An employee's time spent primarily for the benefit of an employer or the employer's business is "hours worked" only if the employer has notice, that is, that the employer knew or had reason to believe that the employee was doing the work.
>
> An employer has the right to require an employee to adhere to its procedures for claiming overtime and an employee has a duty to notify his employer when he is working extra hours. If the employee fails to notify the employer of the overtime work or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of the FLSA. If the employer neither knew nor had reason to believe that overtime work was being performed, the time does not constitute "hours worked."
>
> Constructive knowledge exists if an employer exercising reasonable diligence would become aware that an employee is working overtime. But if the employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime: hours is not a violation of the FLSA....[57]

---

[55] ROA.11870-72, 11875, 6583-97.

[56] ROA.11875, 11891.

[57] ROA.6609-10, 11962-63.

After receiving the instructions, the jury was asked a single question: "Has Mr. Merritt proven that Defendants had knowledge, either actual or constructive, that he was working more than 40 hours in any workweek during the period?" ROA.6616.   The jury answered "No."   The Court entered judgment in the Companies' favor.  ROA.6617-18.  This appeal and the Companies' cross-appeal follow post-verdict motion practice and an extended abatement period.

## SUMMARY OF ARGUMENT

Merritt primarily challenges the Order denying him judgment as a matter of law under Rule 50(b).   He argues (i) he was not required to establish that the Companies had actual or constructive knowledge of his alleged overtime hours, because he was "permitted" to work; and (ii) if a showing of employer knowledge is required, he satisfied his burden because an employer that does not maintain time records automatically has constructive knowledge as a matter of law.

Merritt's first argument, that proof of knowledge is *not*—despite an unbroken line of cases to the contrary—a requirement for overtime plaintiffs, was not presented below, and has been waived.  Otherwise, the Court should reject it as groundless and in conflict with settled authority.

Merritt's second argument, that an *employer's* alleged record-keeping violation satisfies an *employee's* burden to prove constructive knowledge, also conflicts with this Court's cases and would wrongly switch the burden of proof on

an element of the claim to the employer. Because the court faithfully applied those precedents, the Order should be affirmed.

Merritt's second issue appeals a pre-trial ruling finding the proper "multiplier" for calculating overtime damages is to be a half-time rate, not a one-and-a-half-time rate. A decision rejecting Merritt's arguments regarding knowledge will moot this issue. Regardless, on-point and unchallenged Department of Labor ("DOL") guidance mandates a half-time rate, to avoid double counting. Merritt's contrary argument relies on distortion.

The Companies' Conditional Cross-Appeal, which need be reviewed only if this Court reverses the Order, addresses several erroneous summary judgment rulings. First, the Companies show that the court erred in denying summary judgment based on the "commission exemption" in Section 207(i) of the FLSA. The court erroneously concluded that the entire insurance industry is ineligible for the exemption as a matter of law. Absent this finding, which is legal error, the elements of the exemption are satisfied.

Second, the Companies show the court should have awarded the Companies summary judgment on the executive, administrative, and highly-compensated employee exemptions ("EAP Exemptions"), 29 U.S.C. §213(a)(1). It was uncontested that Merritt worked in the capacity of an exempt executive or administrator. Yet the court found Merritt's compensation did not satisfy the "salary

basis" test, as DOL regulations, but not the FLSA, mandate. The Companies show, as applied, that the salary basis test is *ultra vires*.

Finally, the Companies show entitlement to summary judgment based on independent contractor status, because Merritt indisputably controlled the manner and methods of the work performed. Otherwise, this Court should remand for a trial on independent-contractor status.

## ARGUMENT

## I.    THE COURT SHOULD AFFIRM THE JURY'S VERDICT AND THE DISTRICT COURT'S DENIAL OF MERRITT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

In his motion JMOL, Merritt offered two arguments: (i) that the Companies' alleged failure to maintain records compelled a finding that they had constructive notice of Merritt's overtime; and (ii) that the jury lacked a sufficient evidentiary basis to find for the Companies. *See* ROA.8729, 8741. The court found the record-keeping argument foreclosed by binding authority and the sufficient evidence argument refuted by the trial record. ROA.15252, 15254.

Merritt leads his appeal with a *third* argument, not presented below, which asserts that "the FLSA's plain text imposes no explicit knowledge requirement in all cases," *see* Merritt Br. 43, and that this is one such exceptional case. *Id.* at 43-46.[58]

---

[58] Citations in this brief to page numbers of filed documents are to the electronically-generated page number, not to the original document page number.

The newly presented argument is waived, and otherwise groundless because it lacks legal support and conflicts with a legion of authorities.

Merritt has also waived any claim that the verdict was not supported by sufficient evidence because his brief offers no such argument.  ROA.15252-54. Regardless, the existence of sufficient evidence is not subject to reasoned debate. That leaves only Merritt's argument that an employer who does not keep time records has constructive notice as a matter of law, a notion without foundation that the court below rightly laid to rest.

### A.     The District Court Correctly Applied This Court's Precedents And Pattern Jury Instructions Regarding Knowledge Of Overtime

This Court has frequently interpreted the statutory terms at issue here, like "suffer or permit" and "employ."  The Court's settled case law forms the backbone of a pattern jury instruction, which the court faithfully employed and relied on to deny Merritt's JMOL.

The Order begins by explaining that an FLSA plaintiff "must prove that he was 'employed'" to recover overtime, requiring proof "the employer had either actual or constructive knowledge that he was working overtime."  ROA.15248 (citing *Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 F. App'x 448, 455 (5th Cir. 2009), and *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir.1995)). For that reason, an employer's knowledge is "a necessary condition to finding the employer suffers or permits that work."  *Id*. (quoting *Chao v. Gotham Registry, Inc.*,

514 F.3d 280, 287 (2d Cir. 2008)).  In the proceedings below, the proposition was uncontroversial, as the parties "agree[d]" the FLSA's knowledge requirement "is derived from the FLSA's definition of 'employ,' which broadly covers work the employer 'suffers' or 'permits.'"  *Id.*

Merritt's challenge focused on constructive knowledge, which "exists if an employer 'exercising reasonable diligence would acquire knowledge of this fact.'"  *Id.* (quoting *Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825, 827 (5th Cir. 1973)).  His theory was novel, resting on a view that "constructive knowledge is established when an employer violates its recordkeeping duties."  *Id.*  Close scrutiny showed that his theory was not supported by the random case selection Merritt invoked.  ROA.15248-51.  And the court found Merritt's theory conflicted with "this Circuit's FLSA caselaw," because it would "automatically excuse [Merritt] from an element on which he bears the burden," under cases like *Von Friewalde*, *Newton*, and *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 441 (5th Cir.2005).  *See* ROA.15248, 15251.

Merritt's theory, moreover, conflicts with the pattern jury instruction this Court endorses for "cases involving a contention that the employer did not know or have reason to believe" the employee worked overtime:

> An employee's time spent primarily for the benefit of the employer or the employer's business is "hours worked" only if the employer knew or had reason to believe that the employee was doing the work.

\*

> If the employer neither knew nor had reason to believe that overtime work was being performed, the time does not constitute 'hours worked.'"

5th Cir. Pattern Civ. Jury Instr. §11.24, at 284 (5th Cir. 2020); ROA.15251. The court's charge was materially identical. ROA.6609.

Finally, the court noted that the only case considering an indistinguishable argument "squarely rejected" it. ROA.15251-52 (citing *Alston v. DIRECTV, Inc.*, 254 F. Supp. 3d 765, 774-75 (D.S.C. 2017)). It then made short work of Merritt's arguments that the knowledge requirement runs afoul of "FLSA canons," and a "seminal FLSA case," *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 683 (1946). ROA.15252. Because an employer's knowledge is part and parcel of the FLSA's definition of "employ," the knowledge requirement is itself an "FLSA canon." And while *Anderson* is a seminal case, that is because of the burden-shifting framework it set forth for determining hours worked when there are no time records for employees. *Anderson* does not bear on notice and did not involve workers classified as independent contractors. *Id.*

The Order correctly applied settled authority and should be affirmed.

## B. The Court Should Reject Merritt's Novel Contention That An FLSA Plaintiff Need Not Prove Actual or Constructive Knowledge

For more than eighty years, this Court has recognized that "[t]he words 'suffer or permit to work' must be understood with common sense." *Walling v. Jacksonville*

*Terminal Co.*, 148 F.2d 768, 770 (5th Cir. 1945). An employer cannot, that is, suffer

or permit work it does not know about. *See Rutherford Food Corp. v. McComb*, 331

U.S. 722, 728-29 (1947). Yet Merritt devotes the lead section of his brief to the

novel argument that proof the employer had knowledge of overtime is *not* always

part of an FLSA plaintiff's case. *See* Merritt Br. 43 ("the FLSA's plain text imposes

*no* explicit knowledge requirement in all cases").[59] The gist of his argument is that

"[t]he FLSA defines 'employ' to include work that the employer suffers or permits,"

and the Companies "permitted Merritt … to work over 40 hours in a week." *Id.* at

37. Given this definition, Merritt contends "it's unnecessary to analyze" employer

knowledge. *Id.* at 45, 46. Merritt is wrong.

### 1.    Merritt has waived this argument

Merritt's JMOL motion was limited to the argument that the Companies had

constructive knowledge of Merritt's alleged overtime hours based on the

Companies' supposed record-keeping violation and failure to cap Merritt's hours.

*See* ROA.8728-38. His argument had two parts. Section A asserted in its heading:

"The record establishes that Farm Bureau had *knowledge* of Merritt's overtime."

ROA.8729. Section B said: "Because Merritt had no duty to notify Farm Bureau he

was working overtime, Farm Bureau has zero evidence to dispute it had *knowledge*

---

[59] Unless otherwise stated, all emphasis in this brief is added, and internal citations
and quotations are omitted.

of his overtime," and claimed "Farm Bureau had *constructive knowledge* under the correct standards that apply in cases where the employer permits overtime work but violates … recordkeeping duties …."  ROA.8741.

But Merritt did not argue, as he now does, that the notice requirement does not apply to Merritt.  This argument, consequently, has been waived.  *See Celanese Corp. v. Martin K. Eby Constr. Co.*, 620 F.3d 529, 531 (5th Cir. 2010).

### 2.    If not waived, the court should reject this argument

If not waived, this Court should reject Merritt's argument, as it is groundless and foreclosed by this Court's case law.

*First*, Merritt's argument is based on semantics, not the law.  It syllogistically asserts he was "permitted" to work; the word "permit" is included in the definition of "employ;" and if a worker is "employed," he is eligible for overtime, regardless of employer knowledge.  Merritt Br. 38-39.  He cites no cases supporting his view, and as the court below recognized, this Court's cases squarely contradict it.  *Newton*, 47 F.3d at 748 (plaintiff "was employed … if the City had knowledge, actual or constructive, that he was working"); *Von Friewalde*, 339 F. App'x at 455; *Harvill*, 433 F.3d at 441; *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 964-65 (5th Cir. 2016); ROA.15248.

This knowledge requirement is not unique to cases in which the employer had a policy prohibiting overtime work or to "off-the-clock" cases.  It is derived from

the FLSA's "'*prerequisite*' for liability that the defendant employ the plaintiff and from the FLSA's definition of the term 'employ.'" *Alston v. DirecTV, Inc.*, 254 F. Supp. 3d 765, 775 (D.S.C. 2017) (citing *Davis v. Food Lion*, 792 F.2d 1274, 1276-77 (4th Cir. 1986)).  Nor is it unique to this circuit.  *See, e.g.*, *Chao*, 514 F.3d at 287 ("an employer's actual or imputed knowledge … is a *necessary condition* to finding the employer suffers or permits that work."); *Davis*, 792 F.2d at 1276.

In lieu of cases, Merritt invokes the dictionary definitions of "suffer" and "permit," calling them dispositive.  Merritt Br. 38-39 & nn. 85, 86.  But the dictionary does not help Merritt because this Court has *already authoritatively construed* the terms in question, consistent with the dictionary, but taking account of the statutory context and the FLSA as a coherent whole.  While considering an argument that a railroad "employed" a trainee because it "permitted" the trainee to work, the Court explained:

> Sect. 3(e)(g) [of the FLSA] defines 'employee' as any individual employed by an employer; and 'employ' as including 'to suffer or permit to work.'  The last-quoted words *do not mean that every one who permits some one to work* for a third person or the worker's own self becomes an employer bound to pay statutory wages.  They mean that one is an employer if he permits another to work for him, though he has not expressly hired to employed him.  The mere fact that he could have prevented the service does *not* make him in all cases an employer. … The words 'suffer or permit to work' must be understood with *common sense.*

*Walling*, 148 F.2d at 769-70.  Though the railroad "suffer[ed] the trainee to work on its premises," it did not "employ" him.  *Id*.

For Merritt to succeed on his argument, this Court, sitting *en banc*, would need to overturn *two* lines of precedent. *See Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008). Merritt's arguments hardly justify his war on *stare decisis.*

*Third*, Merritt does not grapple with his argument's implications. As a practical matter, the Court would have to revise its pattern overtime instruction, which is built on cases like *Newton*, *Von Friewalde*, and *Fairchild* and contain the rule of law Merritt wants to upset. *See* 5th Cir. Pattern Civ. Jury Instr. §11.24 (2020) at 284 (work counts as "'hours worked' *only* if the employer knew or had reason to believe that the employee was doing the work"). Though the pattern instructions are not binding, district courts rely on them and earn deference when they do. *See, e.g., United States v. Whitfield*, 590 F.3d 325, 354 (5th Cir. 2009) ("[A] district court does not err by giving a charge that tracks this Circuit's pattern jury instructions and that is a correct statement of the law.").

*Finally*, the monumental effort to accommodate the change in law Merritt demands would result in an incoherent, unmanageable rule. Merritt's contention, that one "permitted" to work is automatically due overtime, would create an immediate conundrum. Independent contractors are "permitted" to work by employers, generally without time restrictions, so are "employed" under Merritt's definition. Does Merritt's rule replace this Court's economic realities test?

Merritt's rule would also send employers throughout this Circuit scrambling. Under his regime, proof of knowledge would still be required if "the employer imposed a policy regulating or prohibiting overtime work." Merritt Br. 44. Companies lacking formal no-overtime policies would need to adopt them, even if current practices are operating well, compliant with current FLSA law, and preferred by workers and employers.

Ultimately, Merritt aims to convert a semantics-based argument into a revolution in FLSA jurisprudence. The Court should decline his invitation.

### C.    The Court Should Reject Merritt's Conflation Of The FLSA's Notice Requirements With Its Record-Keeping Requirements

Merritt's only properly preserved argument is that the fact the Companies did not maintain time records equates to constructive notice. Merritt Br. 46-47. He acknowledges the lack of on-point authority creating an exception to the knowledge requirement, *id*. at 47, but insists that this Court create it here. The Court should decline.

Constructive knowledge exists if an employer "exercising reasonable diligence" would become aware that an employee is working overtime. *Brennan*, 482 F.2d at 827; ROA.15248.

Merritt's theory, under which an FLSA record-keeping violation equates to constructive notice, is cobbled from implications he mines from various cases, which the court below rightly deemed unpersuasive. ROA.15248-51.

The child labor case, *Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508, 512 (5th Cir. 1969), does not help Merritt. *See* Merritt Br. 48-49, 60. The evidence showed all work done by minors was in Gulf King's facilities and supervised by a manager. *Gulf King*, 407 F.2d at 513. Here, Merritt did not work anywhere near the Companies' management, operating autonomously.[60] *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) involved an employer who had no knowledge that its employee worked uncompensated overtime. The employee testified he never told anyone about his overtime work, did not report it, and that he would have been paid for the work if he had reported it. *Id*. While the Court stated— in *dicta*—that an employer may not escape responsibility by negligently maintaining records, it also emphasized that "where the acts of an employee prevent an employer from acquiring knowledge ... , the employer cannot be said to have suffered or permitted the employee to work in violation of [the FLSA]." *Id.* at 414-15. Regardless, *Forrester* is not binding authority and provides no reasoned basis to reject the Fifth Circuit's pattern instruction on constructive knowledge, or overturn the jury's verdict.

In *Brennan* (Merritt Br. 52-53), the employer had constructive knowledge where management actively "encourage[d] artificially low reporting" of hours. *See*

---

[60] *See supra* note 42 and accompanying text.

482 F.2d at 828.  Merritt adduced no similar evidence.  The opinion in *United States*

*Department of Labor v. Five Star Automatic Fire Protection*, L.L.C., 987 F.3d 436,

444 (5th Cir. 2021), cited in Merritt's Brief, correctly described *Brennan's* holding,

flagging the fact that "the employees' immediate supervisor pressured them not to

report overtime hours."

    *White v. Patriot Erectors, L.L.C.*, 2024 WL 3181455, at *4-7 (5th Cir. June

26, 2024) (Merritt Br. 53-54) confirmed plaintiffs must prove "knowledge, actual or

constructive," and affirmed a finding that the employer had both because White's

supervisors testified to speaking frequently with him about his overtime work.  No

similar evidence was presented here.  *Davis*, 792 F.2d at 1277 (Merritt Br. 54-55)

analyzed whether employer knowledge was an element of plaintiff's claim or an

affirmative defense.  In response to the employee's argument that *Mt. Clemens*

supported his claim that knowledge was an affirmative defense, the Court noted

"[n]othing in *Mt. Clemens* ... treats the lack of employer knowledge as an affirmative

defense" and rejected the argument.  *Id.*[61]

---

[61] In *Raczkowski v. TC Construction Co.*, 8 F.3d 29 (9th Cir. 1993), (Merritt Br. at 55), the employer maintained a time entry system, and the worker asserted that the employer saw him working unreported time.  The Ninth Circuit responded, on those facts, that "the issue is whether the employer knew that the time was unreported," not whether it knew the employee worked.  *Id.*  The Tenth Circuit's disposition in *Wirtz v. Bledsoe*, 365 F.2d 277, 278 (10th Cir. 1966) (Merritt Br. at 55), simply held that when overtime is reported on time sheets and not objected to, the employer cannot rest on a supposed policy prohibiting overtime.

Merritt also ignored cases with facts most analogous to this one.  In *Godert v.*
*Palo Alto Networks, Inc.*, 2017 WL 5901003, at *1 (N.D. Tex. Nov. 30, 2017), the
court concluded that, even if plaintiff was correct that he was misclassified as an
exempt employee, he "nonetheless failed to prove the elements of his FLSA
overtime claim" because he did not demonstrate that the defendant was "aware of
any of his alleged extra hours."  *Id.* at *6-7; ROA.15251.

*Alston* is also on point.  *See* ROA.15251-52.  As that court stated:

> A plaintiff must prove that the defendant knew or should have
> known of the work performed precisely because doing so is
> integral to proving that the defendant employed plaintiff to do
> that work for purposes of FLSA liability. ... A conclusion that a
> plaintiff is not required to prove a defendant's actual or
> constructive knowledge that plaintiff performed the work
> amounts to a conclusion that *the plaintiff need not prove that the*
> *defendant suffered or permitted the work* …. Such a
> conclusion … upends FLSA analysis." *Id.* (emphasis added).

*Alston*, 254 F. Supp. 3d at 775.  Yet, that is the conclusion Merritt wants this Court
to make.

Finally, Merritt asserts there is no "common-law duty to notify [the] employer
of overtime" in FLSA practice.  Merritt Br. 58-71.  The argument is strange, because
the court did not impose any duties under the "common law."  The true targets of
Merritt's complaint are this Court and its pattern jury instruction, from which the
court below drew the language Merritt objects to.  *See* ROA.15251 ("An employee
'has a duty to notify his employer when he is working extra hours.'") (quoting *Von*

*Friewalde*, 339 F. App'x at 455, 459); 5th Cir. Pattern Civ. Jury Instr. §11.24, at 284 (5th Cir. 2020). The court did not err by citing binding authority.[62]

### D. Sufficient Evidence Supports The Verdict, And Merritt Has Waived Any Argument To The Contrary

Merritt does not argue that the court should have found that the jury lacked a "legally sufficient evidentiary basis" to find for the Companies under Rule 50(b). *See Seibert v. Jackson Cnty., Miss.*, 851 F.3d 430, 434 (5th Cir. 2017). For that matter, his brief does not quote from Rule 50 or cite this Court's cases applying its standards. The words "sufficient evidence," or similar, do not appear in his brief.

Merritt, accordingly, has waived that argument. *See United States v. Jimenez*, 509 F.3d 682, 693 n.10 (5th Cir. 2007) (arguments not raised in the opening brief are waived). Regardless, the court was required only to identify "a conflict in substantial evidence," and did so. *Threlkeld v. Total Petroleum, Inc.*, 211 F.3d 887, 891 (5th Cir. 2000). As it summarized the evidence:

> Plaintiff … "never told anybody [he] was working overtime," he said he "did not ask to be paid overtime pay," and all of Defendants' witnesses … were unaware of Plaintiff working overtime. … [N]one of Defendants supervised Plaintiff's daily tasks and work hours. … Plaintiff … did some activities that

---

[62] Because every inference should be granted in favor of the verdict, it should be presumed the jury found Merritt did not prove actual *or* constructive knowledge of overtime and that Merritt obstructed the Companies' ability to gain such knowledge, making any alleged error harmless. *E.g.*, *Young v. Bd. of Supervisors of Humphreys Cnty., Miss.*, 927 F.3d 898, 905 (5th Cir. 2019) (presuming that jury found Board liable under both standards presented to it).

> were outside the traditional workday. … [But] those afterhours activities and communications did not indicate how long a given task took and it also did not show whether he was working during any other part of that given workday … Defendants' witnesses … testified that Plaintiff's compensation was based in small part on his own work, and in larger part on the work of [others].

ROA.15253-54.  On top of that evidence, which suffices, the jury could find Merritt prevented the Companies from acquiring knowledge of his overtime.  *See Newton*, 47 F.3d at 748 (if employee "deliberately prevents the employer from acquiring knowledge of the overtime work," there is no violation of §207"); ROA.6609.  The jury heard that before filing his case, Merritt "adamantly disagreed that [agency managers] were misclassified"; told other managers that "everybody knew they were independent contractors" and "You do not want to be an employee"; and characterized the notion that agency managers were entitled to overtime as "hogwash."  ROA.11716, 11516, 11532, 15253-54.

Based on this record, "reasonable and fair-minded" certainly "*might*" have found for the Companies, if they were not compelled to do so.  *Threlkeld*, 211 F.3d at 891.  Given the highly deferential review afforded jury verdicts, the court's finding that sufficient evidence supported the verdict should be affirmed.

Because sufficient evidence supports the verdict, and Merritt's legal arguments fail, this Court should affirm the Order.

## II.    THE COURT SHOULD AFFIRM THE DISTRICT COURT'S GRANT OF PARTIAL SUMMARY JUDGMENT TO THE COMPANIES ON USE OF A HALF-TIME MULTIPLIER[63]

Merritt earned commissions on every policy sold or renewed in his agencies,[64] and his commissions were paid *monthly*, in the month following the weeks they were earned.[65]  FLSA regulations provide for a 0.5 multiplier in those circumstances because commissions, by their nature, already cover the time worked to earn them, including overtime.  Consequently, the court's order granting summary judgment to the Companies on the issue of whether a ".5 multiplier" applies to Merritt should be affirmed.  ROA.6356.

### A.    FLSA Regulations Provide Express Guidance On Overtime Calculations For Workers Like Merritt

FLSA regulations provide guidance on how an employer is to compute overtime pay owed on a workweek basis when an employee is paid at some interval *other* than weekly.  *See* 29 C.F.R. §778.109 ("The following sections give some examples of the proper method of determining the regular rate in particular instances.").  This includes regulations that account for pay consisting of piece-rate, day-rate, salary, *or* commissions.  *See generally* 29 C.F.R. §§778.111-778.122.

---

[63] If this Court affirms the verdict, as it should, Merritt's appeal on this point is moot.

[64] *See* ROA.2683, 2692.

[65] ROA.2692 ¶¶50-51 ("[m]onthly compensation is paid after the close of the preceding month"); ROA.2737-38 ¶¶10, 15 (same).

Commission payments are first addressed in 29 C.F.R. §778.117. Recognizing that overtime calculations require determining a worker's hourly "regular rate of pay," this Section explains that computation of a rate of pay that includes commissions is done without regard to "whether the commission is the *sole source*" of compensation, or if "the commission earnings are computed daily, weekly, biweekly, semimonthly, *monthly*, or" otherwise. *Id.*; *see also Brennan v. Lauderdale Yacht Basin, Inc.*, 493 F.2d 188, 191 (5th Cir. 1974) ("The 'regular rate' … is an hourly rate even though the employee may receive commission earnings.").

Of course, *if* a worker is paid commissions in the week they are earned, calculation of overtime for that workweek is simple: the worker is "paid extra compensation at **one-half** of that rate for each hour worked" over forty. 29 C.F.R. §778.118. A half-time (0.5) rate is used because commissions (and other forms of compensation) already compensate an employee at their straight-time rate for overtime hours. In other words, "time-and-a-half" for overtime hours is nothing more than the regular rate of pay calculated for all regular and overtime hours (1.0), as *Lauderdale Yacht*, 493 F.2d at 191, recognized, plus an additional half-time (0.5) rate for overtime hours.

**B.    The "Deferred Commission Payments" Regulations Apply To Merritt's Monthly Commissions**

Sections 778.119 and 778.120 ("Deferred commission payments" sections) address the compensation scenario at issue in *Lauderdale Yacht* and in this case, where commissions are *not* paid in the same workweek earned, which delays (or "defers") the determination of the amount of commissions earned in a workweek. Section 778.119 provides for earned commission to be retroactively "apportioned back over the *workweeks* of the period during which it was earned," with any additional compensation owed paid at *one-half* the hourly rate for hours worked over forty.  29 C.F.R. §778.119.  Section 778.119 assumes that the actual commissions earned in a prior workweek can be determined with precision for the workweek at issue.  *Id.* ("When the commission can be computed and paid, additional overtime compensation due by reason of the inclusion of the commission in the employee's regular rate must be paid.").

When "it is not possible or practicable to allocate the commission among the workweeks of the period in proportion to the amount of commission *actually* earned or reasonably presumed to be earned *each week*," Section 778.120 provides that "some other reasonable and equitable method must be adopted."   29 C.F.R. §778.120; *Lauderdale Yacht*, 493 F.2d at 191.   One "reasonable and equitable

method" provided is to retroactively assume an equal amount of commission "in each week of the commission computation period."  29 C.F.R. §778.120(a).[66]

For commission computation periods of one month, as here, the formula provided in Section 778.120 is clear: First, multiply the monthly commission payment by 12, then divide that sum by 52, to "get the amount of commission allocable to a *single* week."  29 C.F.R. §778.120(a)(1).  Second, divide the commission amount for that week by the total number of hours worked to determine the hourly rate.  Third, multiply the overtime hours worked in the week by "***one-half*** of [the hourly rate]" to determine overtime due.  *Id.* §778.120(a)(2).

This analysis is confirmed by an example DOL provides:

> If there is a monthly commission payment of $416, the amount of commission allocable to a single week is $96 ($416x12=$4,992[/]52=$96).  In a week in which an employee who is due overtime compensation after 40 hours works 48 hours, dividing $96 by 48 gives the increase to the regular rate of $2.  *Multiplying one-half of this figure* by 8 overtime hours gives the additional overtime pay due of $8….

*Id.* §778.120(a)(2)(i).

---

[66] Contrary to Merritt's argument (Merritt Br. 76), Section 778.120 is not an "exception" to Section 778.119.  Section 778.120 merely provides ***alternative*** methods for allocating commissions to particular workweeks when that calculation is delayed, or "deferred," and, unlike Section 778.119, a precise amount for that workweek cannot be determined.

### C.    Merritt's Argument That His Commissions Were Not "Deferred" Is Wrong

Latching on to the undefined word "deferred" in the headings of Sections 778.119 and 778.120, Merritt contends his commissions were not "deferred" because they were paid at the "next regular" monthly pay period, not "delayed" to some later date. Merritt Br. 76-77. But the word "deferred" is not in either of these regulations' operative text, and Merritt does not identify language in the regulation to support his argument. *See Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008) ("[A] subchapter heading cannot substitute for the operative text of the statute.").

Moreover, Merritt was ***not*** paid commissions in the same week they were earned.[67] His commissions were therefore "deferred" under the plain language of these sections. His argument that his ***monthly*** commission payments reflected all the "commissions he earned during the pay period" (Merritt Br. 78) is immaterial. Whether Merritt was paid "the next regular [monthly] payday" or "*after* the next regular [monthly] payday" (Merritt Br. 76, 78) does not change that the 0.5 multiplier still applies to the weekly regular rate of pay derived from his monthly commission income.

---

[67] ROA.2692 ¶¶50-51 ("monthly compensation is paid after the close of the preceding month"); ROA.2737-38 ¶¶10, 15 (same).

Merritt's citations do not support the artificial distinctions he draws between commissions paid on a regular, monthly basis, versus some more "fluctuating" method. Merritt Br. 77. Neither *Clyde v. My Buddy Plumber Heating & Air, LLC*, 2021 WL 778533, at *4 (D. Utah Mar. 1, 2021), nor *Schwind v. EW & Associates, Inc.*, 371 F. Supp. 2d 560, 567-68 (E.D. Tex. 2013), involved a determination that the commission payment timing operated to exclude the application of Sections 778.119 and 778.120. They considered whether the employees earned in excess of 1.5 times their regular rate to meet the FLSA's commission exemption. In both cases, the courts adopted a "weekly average" as a "reasonable and equitable method" to calculate a weekly regular rate of pay under Section 778.120.

Finally, Merritt never explains *why* DOL's regulations would so drastically favor one type of commissioned worker over another. In Merritt's view, two commissioned workers might perform identical work across an identical number of overtime hours. If one is compensated monthly, and the other weekly, the first worker would earn a windfall three times more than the other. Any such outcome would be arbitrary and render the regulations unenforceable. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (agency rule is "arbitrary and capricious" if it "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise").

At bottom, the plain language in Sections 778.119 and 778.120, read in conjunction with other regulations in Part 778, demonstrates that Merritt's arguments are patently incorrect. The Court should affirm the district court's summary judgment decision on the correct half-time multiplier.

**THE COMPANIES' CONDITIONAL CROSS-APPEAL**[68]

## III. THE COURT SHOULD REVERSE THE DISTRICT COURT'S DENIAL OF SUMMARY JUDGMENT TO THE COMPANIES BASED ON THE "COMMISSION EXEMPTION," AND VACATE THE DECISION GRANTING SUMMARY JUDGMENT TO MERRITT

Over two years ago, the Companies filed a motion for summary judgment that should have ended this case. ROA.2598-25. It argued that the Companies were exempt from any obligation to pay Merritt overtime based on the "commission exemption" in Section 207(i) of the FLSA. *See Taylor v. HD & Assocs., L.L.C.*, 45 F.4th 833, 836-39 (5th Cir. 2022) (referring to Section 207(i) as the "bona fide commission exemption").[69] Unfortunately, the district court denied this motion, finding "the insurance industry lacks a retail concept" and is outside the scope of Section 207(i). ROA.6345. This holding is contrary to the plain language of Section 207(i), which applies to *any* "employer," and conflicts with DOL's most

---

[68] If the Court decides to affirm the judgment, the Court need not address the arguments in this cross-appeal.

[69] *See also Alvarado v. Corp. Cleaning Servs., Inc.*, 782 F.3d 365, 366-72 (7th Cir. 2015) (Posner, J.) (applying the commission exemption to window washers), *cited in Taylor*, 45 F.4th at 839-40.

recent interpretative regulation's purpose: "to promote consistent treatment across *all industries* … when determining eligibility for … the [Section 207(i)] exemption." *See* 85 Fed. Reg. No. 97, at 29,867 (the "2020 Rule"). This Court should reverse.

### A.  Section 207(i) Applies To Any "Employer"; It Does Not Exclude The Insurance Industry Or Any Other Industry From Its Scope

Section 207(a) of the FLSA imposes an overtime wage requirement for "a workweek longer than forty hours." 29 U.S.C. §207(a)(1). Subsection (i) of that same section contains the commission exemption, which provides:

> *No employer* shall be deemed to have violated subsection (a) by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.

29 U.S.C. §207(i). By its plain language, the statute makes the commission exemption available to all "employer[s]" who pay "commissions on goods or services" and otherwise meet the requirements of the statute. Insurance policies are "goods" within the meaning of the FLSA.[70] On its face, Section 207(i) is available

---

[70] *See* 29 U.S.C. §203(i) ("goods" include any "articles or subjects of commerce of any character, or any part or ingredient thereof"); 29 C.F.R. §776.20(b) ("goods" under the FLSA "include articles or subjects of commerce of *any* character"

to all businesses covered by the overtime requirement in Section 207(a).

The "[i]nterpretation of a statute must begin with the statute's language." *Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 300 (1989). Section 207(i) makes no mention of insurance and contains no terms categorically excluding insurers from its scope. It applies to all "employer[s]" and "*any* employee" of a "retail or service establishment." The term "any" as used in the FLSA is "best read to mean 'one or some indiscriminately of *whatever* kind.'" *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 162 (2012). Just as Section 207's other exemptions do not exclude the insurance industry, neither does Section 207(i).[71] Accordingly, the court's first interpretive step is "the last," and the "judicial inquiry is complete." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).

---

(emphasis in original), including "things such as ideas, orders, and intelligence … newspapers …." "*Insurance policies are 'goods' within the meaning of the Act.*").

[71] When Congress intends to include or exclude an industry from an FLSA exemption's scope it does so *expressly*. *See, e.g.*, 29 U.S.C. §207(l) (applicable to "any employee in *domestic service*); *id.* §207(m) (applicable to *"tobacco industry"*); *id.* §207(k); *id.* §207(n). Congress could have carved out the insurance industry for specific treatment, so the absence of such language is a meaningful omission. *See Russello v. United States*, 464 U.S. 16, 23 (1983).

### B. The DOL's 2020 Rule Similarly Makes Clear That The Commission Exemption Is Available To All Industries

On May 19, 2020, the DOL repealed a "partial list of establishments" that it had previously viewed as "unable to qualify" for the commission exemption because they had "no retail concept." 85 Fed. Reg. 29,867. One entry on this repealed list included: "Insurance; mutual, stock and fraternal benefit, including insurance brokers, agents, and claims adjustment offices." 29 C.F.R. §779.317 (repealed). The 2020 Rule withdrew this list and recognized that Section 207(i) permits "all establishments" in "all industries" to qualify for the exemption. 85 Fed. Reg. at 29,868-29,869.[72]

DOL's 2020 Rule was "intended to promote consistent treatment across *all industries*" under Section 207(i). 85 Fed. Reg. 29,867. It "*permits the reevaluation of an industry's retail nature as developments progress*," and states "[e]stablishments which had been listed as lacking a retail concept may now assert … that they have a retail concept and *may be able to qualify* as retail or service establishments." *Id.* at 29,867, 29,868. Going forward, DOL will treat "*all* establishments equally under the same standards," and "*[a]ll* establishments may be recognized as retail if they satisfy these criteria." *Id.*

---

[72] DOL also repealed a partial list of establishments that "may be recognized as retail." *Id*. at 29,867.

The 2020 Rule confirmed the plain text reading of Section 207(i), which does not exclude any industries.[73]

## C. Merritt's Agencies, And His Compensation, Satisfied All Requirements Of Section 207(i)

As the district court recognized, the commission exemption has three requirements: (1) the employee must be working in a "retail or service establishment," (2) the employee's regular rate of pay must be more than one and one-half the minimum wage, and (3) more than half of the employee's compensation must represent "commissions on goods or services." ROA.6340. All were satisfied.

### 1. Merritt did not contest two of the three requirements for the commission exemption

Merritt was paid commissions and he did not contest that his rate of pay exceeded one and one-half times the applicable minimum wage. ROA.6340. Nor could he, as his compensation *exponentially* exceeded it. During the relevant period, Merritt earned between $552,000 and $627,000 annually,[74] and his monthly compensation ranged from $29,017 to $62,572 per month. ROA.2622 (citing ROA.2627) (chart of Merritt's monthly compensation).

---

[73] Since the 2020 Rule, the DOL has confirmed that establishments previously listed as ineligible for the commission exemption may now qualify. *See, e.g.*, WHD Opinion Letter FLSA2021-6 at 3-4 (Jan. 19, 2021) (previously excluded industry now eligible).

[74] ROA.2828 ¶8b; ROA.2834 ¶31.

### 2.    Merritt's Agencies were "retail or service establishments"

The only contested issue was whether the *agencies* Merritt managed were "retail or service establishments" within the meaning of Section 207(i).  Based on the undisputed facts, they were.  The statute uses the term "establishment," which refers to a "'distinct physical place of business' rather than to 'an entire business or enterprise' which may include several places of business."  29 C.F.R. §779.23; 29 C.F.R. §779.303.  But instead of evaluating whether the agencies where Merritt worked were selling "goods" at retail, the district court erroneously analyzed whether the entire insurance industry had a "retail concept."

The agencies included five offices (ROA.2705 ¶13) at which Merritt and his agents sold various insurance products issued by the Companies, and dozens of retail insurance products issued by other companies (called "brokerage" products).  ROA.2685-88 ¶¶38-39; ROA.2735 ¶¶3,5.  Each agency was "open to the general public," served walk-in business,[75] and marketed these products "on a retail basis to consumers and members of the general public."  ROA.2706 ¶¶14-15.  When customers purchase a TFB policy, they also become members in the local non-profit farm bureau for an annual fee of $25 to $50.  ROA.2705 ¶10.  Anyone can be a member (ROA.2704 ¶10), and there is no requirement that a member be affiliated with

---

[75] ROA.2706-08 ¶¶15-17; ROA.2755 ¶4 ("The agency sold insurance policies to the general public").

agriculture.  ROA.2705 ¶10.  Policies "are offered and sold to all members of the community[.]"  ROA.2705 ¶10.  No membership is required for brokerage or to renew life insurance policies from SFB Life.  ROA.2705 ¶12.

The agencies also served the convenience of the community through products most adult community members want or need.  ROA.2707 ¶17.  They embedded themselves into the fabric of the community through centralized locations, open-door policies, advertising, and community outreach.[76]  As Ernest Csiszar, the Companies' expert, explained:

> All [of the Companies'] insurance products are sold in the retail market.  None of their policies are distributed or sold in the wholesale market.  Their only channel of distribution is the "bricks and mortar" local agency location, staffed by the agency manager and agents that are part of their community.

ROA.2803.[77]  The agencies did not operate as a "middleman," distributor, or reseller.  ROA.2710 ¶29; ROA.2765-66 ¶18; ROA.2805.  Policies were purchased by consumers for themselves, "not for resale."  ROA.2710 ¶29; ROA.2765-66 ¶¶18, 19.  They were at the end of the distribution chain, *i.e.*, the policyholders were the "end user" of the policy.  ROA.2710-11; ROA.2765-66 ¶18.  Agencies sold policies in small quantities, or one policy at a time.  ROA.2710 ¶29; ROA.2766 ¶19.

---

[76] The Companies' summary judgment motion included a detailed description of each agency office (ROA.2707-10), along with photographs.  ROA.2712-32.

[77] Mr. Csiszar is one of the nation's foremost insurance experts with decades of experience in the insurance industry.  ROA.2760-61 ¶¶4-5; ROA.2774-76.

The plain meaning of "retail" is the sale of goods to the public in relatively small quantities for use or consumption rather than for resale.[78] Because there is no dispute that insurance policies are goods, the agencies are plainly "retail" establishments.  And because Section 207(i) is unambiguous, there is no need to consult extrinsic sources, like regulations or legislative history.  All three requirements for the commission exemption were satisfied.

### D.    The District Court Erred In Analyzing Section 207(i)

Adopting arguments proffered by Merritt, the court made a series of fundamental errors in its analysis of Section 207(i).

#### 1.    The district court incorrectly found *Mitchell* "controlling"

The district court adopted Merritt's argument that a 1959 Supreme Court decision was "controlling" and had held that an insurance agency could <u>not</u> satisfy the commission exemption in Section 207(i).  ROA.6345-6346 (citing *Mitchell v. Ky. Fin. Co.*, 359 U.S. 290 (1959)).  This was error.

*First*, *Mitchell* did not even construe Section 207(i)'s commission exemption. *Mitchell* was decided in *1959*, and Section 207(i) was not enacted until 1961.  Pub. L. 87-30, §6(g).  *Mitchell* addressed whether a *personal loan company* was a "retail

---

[78] *See Merriam-Webster*, available at https://www.merriam-webster.com/dictionary/retail; *The Britannica Dictionary*, available at https://www.britannica.com/dictionary/retail ("the business of selling things directly to customers for their own use").

or service establishment" under the 1949 amendment to **Section 213(a)(2)** of the FLSA. 359 U.S. at 292. Section 213(a)(2), since repealed, was a different statute known as the "***intrastate business exemption***," which had used the term "retail or service establishment" in a different context. As Judge Posner explained, "the two [exemptions] serve different purposes." *Alvarado*, 782 F.3d at 369-70; *id*. at 371 (criticizing courts that "have woodenly ported the definition from Section 213(a)(2) to the commission exemption").

*Second*, *Mitchell* did ***not involve insurance*** or insurance agencies. It involved *loan companies* that "concede[d] that they are not engaged in the sale of 'goods.'" 359 U.S. at 293. To resolve whether they were a "retail or service establishment" under Section 213(a)(2), the Court turned to legislative history showing that certain drafters of the 1949 amendment did not intend to embrace "banks, insurance companies, building and loan associations" and others. *Id*. at 295. The Court's decision had nothing to do with insurance agencies or the retail sale of insurance policies, which are expressly defined as "goods." The words "insurance companies" appear in *Mitchell* only because they were sandwiched between "banks" and "building and loan associations" in a committee report relating to an entirely different statutory provision.

*Third*, Section 207(i) is unambiguous. "[T]he Supreme Court has stated repeatedly that where a statute's text is clear, courts should not resort to legislative

history." *Adkins v. Silverman*, 899 F.3d 395, 403 (5th Cir. 2018). Rewriting Section 207(i) based on legislative history of Section 213(a)(2) is improper.

*Finally*, *Mitchell* relied on the doctrine that FLSA exemptions should be "narrowly construed." 359 U.S. at 295. The Supreme Court *rejected* that principle in *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 90 (2018) (holding the FLSA exemptions should be given a "fair reading"). The other non-binding authorities the court cited are not applicable or persuasive. ROA.6346.[79]

Far from "controlling," *Mitchell* provides no justification for rewriting Section 207(i) to exclude the "insurance industry" from its scope. ROA.6345.

### 2. The district court's reliance on 29 C.F.R. §779.414 to exclude the insurance industry from Section 207(i) was error

Citing 29 C.F.R. §779.414, the court opined that "using common sense and common parlance, this Court finds it hard to fathom a retail concept in Defendants' insurance businesses." ROA.6346. Section 779.414 lists certain establishments, like those selling "furniture," "bedding," "appliances," and "clothing" as *examples* of ones "Section 7(i) was enacted to relieve." The court justified excluding the

---

[79] *Parks v. Eastwood Ins. Servs., Inc.*, 2003 WL 25682287, at *3 (C.D. Cal. Feb. 24, 2003), and *Burden v. SelectQuote Ins. Servs.*, 848 F. Supp. 2d 1075, 1085 (N.D. Cal. 2012), issued before *Encino Motors* and the 2020 Rule. *Hogan v. Allstate Ins. Co.*, 361 F.3d 621, 628 (11th Cir. 2004), did not resolve any claim under the Commission Exemption.

insurance industry from the commission exemption based on its subjective view that insurance is different from the businesses listed in §779.414.

But §779.414 does not purport to list every type of business within Section 207(i)'s scope. It states "[t]here may be **other** segments in retailing" besides those listed, and *"[e]ach such situation will be examined"* individually. Section 779.414 makes clear that its examples are *not* exclusive. Read properly, it does not conflict with the 2020 Rule or the statute, which make the commission exemption available to "all industries." 85 Fed. Reg. 29,867.

If there were a conflict, §779.414 would lack the "power to persuade" and should be ignored. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Section 207(i) has no limiting language, so §779.414's examples of the "types" of retailers some members of Congress may have had in mind when enacting it are not germane.

### 3. The district court's reliance on 29 C.F.R. §779.316 to exclude the insurance industry from Section 207(i) was error

The court also cited 29 C.F.R. §779.316, which Merritt argued was "dispositive." ROA.6344. The court noted §779.316 was "still in effect" and quoted the following language: "[t]he term 'retail' is alien to some businesses or operations. For example, transactions of an *insurance company* are not ordinarily thought of as retail transactions. … As to establishments of such businesses, therefore, a concept

of retail selling or servicing does not exist." ROA.6344 (emphasis added by the district court).

To the extent the court relied on §779.316 to refuse to apply Section 207(i)'s plain terms, it erred. Like the *Mitchell* decision, the 50-year-old guidance found in §779.316[80] applied to the repealed ***intrastate business exemption***, not Section 207(i). Regardless of whether §779.316 is "still in effect," it cannot be read to conflict with the statute or contradict the more recent guidance set forth in the 2020 Rule, making clear that the commission exemption is available to all industries.[81]

This Court should reverse the district court's error of law in denying the Companies' summary judgment under Section 207(i), and vacate the contrary summary judgment in favor of Merritt.

---

[80] Section 779.316 was promulgated April 9, 1970. 35 Fed Reg. 5856.

[81] In connection with repealed Section 213(a)(2), §779.316 created the requirement of a "retail concept," "whatever that might mean." *Alvarado*, 782 F.3d at 370. A "retail concept" is not a requirement of Section 207(i), but the Companies proved one anyway. An establishment with a "retail concept" typically "sells goods or services to the general public," "serves the everyday needs of the community," operates "at the very end of the stream of distribution," disposes of its services "in small quantities," and is not a manufacturer. 29 C.F.R. §779.318(a). As discussed above, the agencies do all of these things. The Companies' motion for summary judgment addressed these factors in even more detail and showed why there was no genuine issue of material fact on any of them. ROA.2612-17, 4518-20.

## IV. THE COURT SHOULD REVERSE THE DISTRICT COURT'S DENIAL OF SUMMARY JUDGMENT TO THE COMPANIES BASED ON THE ADMINISTRATIVE, HIGHLY-COMPENSATED, AND EXECUTIVE EXEMPTIONS

The FLSA exempts "any employee employed in a bona fide executive, administrative, or professional capacity" from overtime requirements. 29 U.S.C §213(a)(1) (the "EAP exemptions"). To qualify for each exemption, DOL has issued rules requiring that an employee perform certain duties, and separately, receive a minimum level of compensation paid on a "salary basis" of "not less than $455 per week" (or $1,292 per month). 29 C.F.R. §§541.200(a)(1), 541.600(b).[82] Because the undisputed facts showed that Merritt satisfied all of the requirements, the Companies moved for summary judgment based on the administrative, highly-compensated, and executive exemptions. ROA.2637-66. The district court wrongly failed to grant summary judgment on these exemptions and should be reversed.

### A. The Undisputed Evidence Showed That Merritt Provided Services In A Highly Compensated, Administrative, And Executive Capacity

The Companies' motion presented overwhelming and undisputed evidence showing that Merritt, in his position as agency manager, was responsible for all of

---

[82] The regulations applicable to Merritt are at 69 Fed. Reg. 22,260 *et seq.* (April 23, 2004) (the "2004 regulations"). These regulations were later revised effective January 1, 2020, to raise the minimum weekly requirement from $455 to $684, and total compensation for the "highly compensated" exemption from $100,000 to $107,432. 84 Fed. Reg. 51,307 (Sept. 27, 2019).

the "duties" required by the regulations to satisfy the "administrative" exemption. *See* ROA.2649-50. With respect to the highly-compensated exemption ("HCE"), Merritt was paid between $552,000 and $627,000 annually,[83] far in excess of the "total annual compensation of at least $100,000" required by the HCE regulations. 29 C.F.R. §541.601(a). And he easily satisfied the HCE duties requirement, because it demands only "one or more" of the duties applicable to the administrative exemption. *Id*. Similarly, the Companies' motion demonstrated that Merritt worked in an executive capacity and satisfied all of the related requirements under the regulations for the executive exemption. ROA.2661-64.

In his response, Merritt *conceded* all of these material facts and submitted no contrary admissible evidence, arguing instead that "[t]he only issue to consider" was "how Merritt was paid." ROA.3549. According to Merritt, it was "outcome-determinative" that he "wasn't paid a salary." *Id*. Merritt argued that he "was not paid on a salary basis" (as required by the regulations for all three exemptions) because he was paid "on a commission basis." ROA.3551. Citing an inapposite case (*Hewitt*) involving an oil and gas worker who was paid a *daily* rate,[84] and despite unrebutted evidence that his compensation was in fact calculated, paid, and received

---

[83] ROA.2828 ¶8b; ROA.2834 ¶31.

[84] ROA.3552 (citing *Hewitt III*).

on a *monthly* basis,[85] Merritt made an argument that his pay failed the salary basis test because it "was not calculated on a weekly or less-frequent basis." ROA.3552.

## B. Merritt's Compensation Satisfied The Requirements Of The Salary Basis Test

In order to satisfy the administrative or executive exemption, the DOL regulations provide that Merritt must be "[c]ompensated on a salary basis at a rate of *not less than $455 per week*," or "monthly on a salary basis of $1,971.66" (rounded to **$1,972 per month**). 29 C.F.R. § 541.600(a), (b). The HCE regulations require total annual compensation "of at least $100,000," which "must include at least $455 per week paid on a salary or fee basis." 29 C.F.R. § 541.601(a), (b)(1).

The "regulations do not require that the wages be *called* a 'salary' to qualify as being paid on a 'salary basis.'" *Akins v. Worley Catastrophe Response, LLC*, 2013 WL 1907486, at *4 (E.D. La. May 8, 2013). Rather, the regulations state that "[a]n employee **will be considered to be paid** on a 'salary basis' within the meaning of these regulations if the employee *regularly receives each pay period* on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. §541.602(a). Merritt's pay met these requirements.

---

[85] ROA.2692 ¶51; ROA.2693 ¶¶52-54; ROA.2737 ¶10; ROA.2738 ¶15.

As agency manager, Merritt had a unique compensation structure that paid him commissions on every policy sold or renewed in his agency. ROA.2691-92 ¶¶48-50. In comparison to the **$1,972** salary basis minimum, Merritt's actual monthly compensation ranged between **$29,017** and **$62,571**. ROA.2627; ROA.2622.

The vast majority of his monthly compensation (89%) was based solely on the *renewal* of existing policies (ROA.2898 ¶8), which required no work by Merritt or new sales. As explained by TFB's Vice President of Sales:

> A large part of Merritt's Monthly Compensation was received automatically upon the renewal and payment of premium on existing in-force policies. This compensation was not subject to any reduction due to variations in the quality or quantity of Merritt's work. Rather, this compensation was guaranteed and was not dependent on any new sales by either Merritt or other agents in the agency. *Merritt could not have worked [at] all during a particular pay period, and he still would have received this automatic renewal-based compensation.*

ROA.2694 ¶¶57-58 ("Renewal Compensation" … "provided a guaranteed and predetermined income stream that was not subject to reduction because of variations in the quality or quantity of work Merritt performed.").

As TFB's actuarial expert explained, the premium retention rate for previously sold policies in Merritt's agencies ranged between 92-95%. ROA.2899 ¶12. Excluding any incentive compensation and income from SFB Life, Merritt never earned less than **$17,600** per month in renewal compensation—**almost 12**

times the $1,972 required by the salary basis test.  ROA.13168.  The compensation

structure "effectively guaranteed that Merritt's commission income *from renewals*

*alone* would not fall below $1,972 per month."  *See* ROA.2899 ¶13 (the probability

of such an event was "less than 0.002 (i.e., less than two-tenths of one percent)."[86]

There was no *genuine* issue of fact that Merritt's compensation was guaranteed to

satisfy the salary basis test minimum, and in fact it did so in every month.

### C.    The District Court Erred In Denying The EAP Exemptions Based On The Conclusion That Merritt Did Not Satisfy The Salary Basis Test

The district court held a hearing on the parties' competing motions for

summary judgment on the administrative, HCE, and executive exemptions.

ROA.11207-43.  Merritt's counsel confirmed that he *conceded all other issues* and

argued that "salary basis is 100 percent the only issue on this."  ROA.11208; *see*

*also* ROA.11209 (mentioning "the duties test" and stating ""[t]he only question here

is the salary basis").  Merritt's primary arguments were that the U.S. Supreme

Court's opinion in *Helix Energy Solutions Group, Inc. v. Hewitt*, 598 U.S. 39, 67

(2023), governed this case (ROA.11211-212); that "commissions" can never satisfy

the salary basis test (ROA.11215); and despite the actuarial impossibility that

Merritt's compensation could never fall below $1,972 per month (ROA.2899 ¶13),

---

[86] To the extent he had any objections to TFB's expert testimony, Merritt waived them by failing to object in the district court pursuant to Fed. R. Civ. P. 56(c)(2).

it was not sufficiently guaranteed because it was not a "traditional salary." ROA.11211-212.

After a recess, the district court gave the following rationale for deciding to deny the Companies' motion for summary judgment and grant Merritt's motion:

> So on the cross-motions for summary judgment regarding the administrative, highly compensated, and executive exemptions, I'm going to deny defendant's motion but grant plaintiff's because my view of Hewitt from the Texas Supreme Court, which was decided after <u>Ferguson</u> -- the Texas -- U.S. Supreme Court is makes it clear that pure commissions is not salary basis.
>
> And there was no guaranteed salary basis or nothing that fit the salary basis under a textual reading of the regulation as sort of espoused in Hewitt. So that'll be the ruling on ECF 100. It'd be denied. That's defendant's motion and ECF 131 -- no, wait. ECF 107, excuse me. Plaintiff's motion on that point will be granted.

ROA.11242-43.[87]   For the reasons explained above, Merritt's compensation arrangement, although called "commissions," was guaranteed to satisfy, and did satisfy, the salary basis test. The *Hewitt* case involved a "toolpusher" on an offshore oil rig who was paid a "daily rate" that ranged from $963 to $1,341 per day. 598 U.S. at 47. Hewitt did not involve insurance or a renewal-based commission system, or commissions at all. The Court held Hewitt was not paid on a salary basis because he was paid "by the day," not "by the week (or longer)." *Id*. at 50. Unlike Merritt,

---

[87] The court later entered a written order memorializing that it had denied the Companies' motion (ECF No. 100) "for the reasons stated on the record" at the hearing. ROA.6348.

whose monthly compensation was guaranteed to exceed the salary basis minimum, Hewitt was not guaranteed to receive compensation every week. *Hewitt* is inapposite and does not support the district court's decision here.

**D.    If The District Court's Interpretation Of The Salary Basis Test Is Correct, The Test Is Invalid And Cannot Be Enforced**

The FLSA delegates authority to DOL "define[] and delimit[]" the EAP Exemptions. *See* 29 U.S.C. §213(a)(1). In *Mayfield v. United States Department of Labor*, 117 F.4th 611, 621 (5th Cir. 2024), this Court considered whether DOL exceeded that authority by imposing a "salary level" test, which limited eligibility for the EAP Exemptions to employees that earn at least $684 per week. *Mayfield* found "the link between the job duties" of an executive or administrative employee "and salary [level] is strong." *Id.* at 619. Here, Merritt's six-figure compensation easily satisfies any "level" test intended to ensure he was a bona fide executive or manager.

To the extent Merritt's arguments and the district court's analysis are correct—that the salary basis test operates here to disqualify Merritt from the EAP exemptions because he was paid a form of "commissions" and not a "traditional salary"—the salary basis regulation would be in conflict with the statute and therefore invalid and unenforceable.

The validity of the salary basis test was not before the Court in *Helix Energy Solutions Group, Inc. v. Hewitt*, 598 U.S. 39 (2023). But in a dissenting opinion,

Justice Kavanaugh, joined by Justice Alito, considered whether the salary basis test

was *ultra vires*. He wrote:

> The Act focuses on whether the employee performs executive
> duties, not how … an employee is paid. So it is questionable
> whether the Department's regulations—which look not only at
> an employee's duties but also at how much an employee is paid
> and how an employee is paid—will survive if and when the
> regulations are challenged as inconsistent with the Act. ***It is***
> ***especially dubious for the regulations to focus on how an***
> ***employee is paid*** … An executive employee's duties (and
> perhaps his total compensation) may be relevant to assessing
> whether the employee is a bona fide executive. But I am hard-
> pressed to understand why it would matter for assessing
> executive status whether an employee is paid by salary, wage,
> ***commission***, bonus, or some combination thereof.

*Id.* at 67-68. Because the employer, Helix Energy, waived this argument, the

question "remains open for future resolution[.]" *Id.* at 68. This case presents that

issue.

The relevant statutory text is short and clear: Congress exempted "*any*

employee employed in a bona fide executive, administrative, or professional

*capacity*." 29 U.S.C. §213(a)(1). The key term "capacity" was analyzed by the

Supreme Court when construing the FLSA's outside sales exemption, part of the

same statutory provision as the EAP Exemptions, Section 213(a)(1). *Christopher v.*

*SmithKline Beecham Corp.*, 567 U.S. 142, 161 (2012). *Christopher* noted that

capacity means "[p]osition, condition, character, relation." *Id.* It held that the FLSA

requires an inquiry "that views an employee's *responsibilities* in the context of the particular industry in which the employee works." *Id.*

In this case, Merritt *conceded* that he satisfies the duties tests for both the administrative and executive exemptions, meaning he conceded he was working in an administrative and executive capacity. And his compensation *soars* past the salary level necessary to exclude employees unlikely to be employed in an administrative or executive capacity. Interpreting the salary basis test to *exclude* Merritt from the statutory exemptions impermissibly conflicts with the statute and leads to "absurd results." *Est. of Miranda v. Navistar, Inc.*, 23 F.4th 500, 506 (5th Cir. 2022).

Because Merritt was undeniably highly compensated and managing his agencies in an administrative and executive capacity, the salary basis test cannot be interpreted to disqualify him from statutorily provided exemptions. This Court should hold that Merritt's compensation satisfied the salary basis test, or in the alternative, that the salary basis test is *ultra vires* and unenforceable in this case. The district court's denial of the Companies' motion for summary judgment based on the administrative, executive, and highly-compensated exemptions should be reversed.

## V.   THE COURT SHOULD VACATE THE DISTRICT COURT'S DECISION GRANTING SUMMARY JUDGMENT TO MERRITT, AND DENYING SUMMARY JUDGMENT TO THE COMPANIES, ON "EMPLOYEE STATUS"

This Court applies the "economic realities" test to determine worker status under the FLSA. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379-80 (5th Cir. 2019).   The test evaluates "whether the alleged employee so economically depends upon the business," such that "as a matter of economic reality, [he] is not in business for himself." *Thibault v. Bellsouth Telecomms., Inc.*, 612 F.3d 843, 845 (5th Cir. 2010).  "Economic dependence is not conditioned on reliance on an alleged employer for one's primary source of income, for the necessities of life." *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1054 (5th Cir. 1987).  What matters is if "workers are dependent upon a particular business … for their continued employment' in that line of business." *Id.*

Five non-exhaustive factors are considered: (1) control; (2) relative investments; (3) opportunity for profit; (4)  skill and initiative; and (5) permanency. *Id.* at 1043.  The court, relying on an earlier, flawed summary judgment order in *Ferguson v. Texas Farm Bureau Business Corp.*, Case No. 6:17-cv-00111, 2021 WL 2349340 (W.D. Tex. May 19, 2021), *adopted*, 2021 WL 7906826 (W.D. Tex., June 22, 2021) ("*Ferguson*"), and the distinguishable decision in *Hopkins v.*

*Cornerstone America*, 545 F.3d 338 (5th Cir. 2008), erred in granting Merritt summary judgment.[88]

The court's core error was considering the critical issue of control. ROA.6313-15. Instead of focusing on Merritt's broad control over the "manner and method" of performing the work—as this Court's cases instruct—the district court focused on how the Companies "owned" the policies Merritt sold and set their terms and rates. But all insurers *necessarily* control their policies regardless of how they organize their salesforce; the State of Texas requires it. In the virtually identical case of *Yoder v. Florida Farm Bureau Casualty Insurance Co.*, the Eleventh Circuit affirmed that Florida Farm Bureau's agents controlled the manner and means of the work and were properly classified as independent contractors as a matter of law. *See* 2022 WL 1055184, at *4 (N.D. Fla. Mar. 9, 2022) (*Yoder I*), *aff'd*, 2023 WL 3151107 (11th Cir. 2023) (*Yoder II*). The court below erred by declining to follow the same path.

This Court should reverse and direct that summary judgment be entered in the Companies' favor or. In the alternative, the Court should find material fact disputes preclude judgment and remand the issue for a new trial. ROA.12201-02.[89] *Flores*

---

[88] ROA.6308-20.

[89] "When parties file cross-motions for summary judgment, '[courts] review each party's motion independently, viewing the evidence and inferences in the light most

*v. FS Blinds, L.L.C.*, 73 F.4th 356, 366 n.6 ("[T]his court applies a presumption that weighs in favor of submission of employee-status inquiries to the jury.") (brackets omitted).

### A. *Hopkins* And *Ferguson* Do Not Control The Outcome

While both cases arose in the insurance industry, on every material fact, Merritt differed from the sales leaders analyzed in *Hopkins*. The *Hopkins* case did not involve multi-line agency managers; its sales leaders could sell only one product. Unlike Merritt, the employer in *Hopkins*, not the sales leaders, controlled "[t]he major determinants" of profit or loss because it controlled "sales leads," "hiring, firing, and assignment of subordinate agents," "unilaterally defined the Sales Leaders' [non-exclusive] territories," and banned them from operating other businesses. *Hopkins*, 545 F.3d at 342, 344. Merritt, by contrast, was not dependent on sales leads or penalized for selling other companies' brokerage products,[90] and he exercised substantial influence over recruiting, hiring, and termination of agents and control over staff.[91]

---

favorable to the nonmoving party.'" *Duval v. N. Assurance Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013).

[90] ROA.3675-76, 2681, 2679-82, 2692, 2751, 14314-16, 14322.

[91] ROA.3838-49, 2755, 2757,.

Merritt chose to contract in Grimes and Brazos Counties because of the opportunity he saw there, he was not assigned.[92] He could prospect in other counties, where he generated considerable business.[93] Also absent from *Hopkins*, but dispositive here, is Merritt's significant "buy-in," investments, and expense write-offs,[94] which point to independent-contractor status. *See Yoder I*, 2022 WL 1055184 at *7 ("True employees simply don't invest significant capital into their work in this way.").

*Ferguson*, likewise, should not have been followed. The economic realities test is fact-dependent. *See Talbert v. Am. Risk Ins. Co.*, 405 F. App'x 848, 856 (5th Cir. 2010) (affirming decision finding one insurance adjuster an employee and another an independent contractor). Much *Ferguson* testimony was irrelevant to Merritt because the witnesses denied personal knowledge of Merritt's situation.[95] On the record adduced in this case, guided by the more persuasive decision (the Eleventh Circuit's *Yoder II* disposition), Merritt was an independent contractor.

---

[92] ROA.2680-81, 14365-66.

[93] ROA.3673.

[94] ROA.3408-10, 3422-25, 13336-606 (Merritt's tax returns).

[95] ROA.887-88, 1065, 1105-06, 1156, 1161, 1177.

**B.    The Control Factor Favors Independent Contractor Status Where Merritt Controlled The Manner And Method Of His Work**

In evaluating control, the district court wrongly compared the parties' control over "day-to-day" operations versus "higher-level" operations.  ROA.6313-15.  In *this* Circuit, the proper focus is on the "details," or the "manner and method" of the work.  *See Carrell v. Sunland Constr., Inc.*, 998 F.2d 330, 332-33 (5th Cir. 1993) (control factor favored independent contractor status where employer did not control "the ***methods or details*** of the welding work" or "the ***manner or method*** of the pipe welding").

In the inquiry, standard industry requirements—which apply regardless of worker classification—should be discounted.    *Parrish*, 917 F.3d 382 ("safety training and drug testing" in context of *oil-drilling site* is not indicative of employee status) (emphasis in original).  The same is true of reporting requirements.  *See, e.g.*, *id.*; *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1315 (11th Cir. 2013) ("keeping clients informed of job progress is consistent" with independent contractor status).

**1.    Merritt controlled the manner and method of the work**

Merritt controlled how he managed his agencies, advertised, marketed, networked, and branded his agencies.[96]  Merritt determined which agencies he

---

[96] ROA.2680.

wanted to run.[97] The Companies did not "relocate" or "assign" him anywhere.[98] He and his agents were free to sell insurance throughout Texas.[99]

The court considered Merritt's "captive" (or exclusive) status material. But exclusivity is not unique to the Companies, and did not control *how* Merritt sold insurance.[100] Before filing suit, Merritt acknowledged as much in a sworn declaration.[101] Exclusivity is not determinative of control. *See Hickey v Arkla Indus., Inc.*, 699 F.2d 748, 750-53 (5th Cir. 1983) (affirming judgment that salesperson was an independent contractor despite exclusivity under the ADEA); *Yoder I*, 2022 WL 1055184 at *4, n.5 (citing cases).

Subject only to regulatory requirements applicable to any insurance producer, Merritt could advertise any way he deemed appropriate.[102] For example, in 2016, Merritt incurred $34,000 for advertising.[103] Because Merritt controlled the manner and method of performing the work, this factor favors independent contractor status.

---

[97] ROA.2680-81, 14365-66.

[98] ROA.2680-81.

[99] ROA.2676, 14384-419.

[100] ROA.2690-91, 2797-801.

[101] ROA.2904-05.

[102] ROA.2680, 2749-50, 13248, 13274, 14396, 14422.

[103] ROA.14421-22.

*See Parrish*, 917 F.3d at 381 (plaintiffs who "control[ed] the ***manner and method*** of their work" were independent contractors); *Thibault*, 612 F.3d at 847 (where defendant "did not control the ***manner and method*** of" the splicing work, factor favored contractor status); *Carrell*, 998 F.2d at 323-33.

### 2.    The Companies' compliance with insurance regulatory requirements is not indicia of relevant "control"

The Texas Department of Insurance ("TDI") regulates virtually every aspect of an insurer's and its agents' activities,[104] including product pricing,[105] policy forms,[106] and who agents may sell policies for (licensing and appointments).[107] In addition, all insurance companies have underwriting procedures and guidelines that must be followed.  ROA.2763, 2780-81.  Such are required to maintain financial solvency and comply with regulations.  ROA.2781.  All agents have a legal duty to file advertisements with the insurance company for written approval, which the insurer must maintain.[108]

---

[104] ROA.2762, 2777, 2800.

[105] ROA.2792.

[106] ROA.2792-93.

[107] *See* Tex. Ins. Code §4001.201; ROA.2800.

[108] ROA.2791-92; Tex. Admin. Code §§21.116, 21.122(c), 21.122(d); Tex. Ins. Code §§541.052, 541.051, 541.061.

The court focused on the Companies' control over product offerings, pricing, and certain advertising, or what it called "higher-level" control (ROA.6314-15). Yet such "higher-level control" did not impact Merritt's control over his manner or method of managing the agencies. Moreover, any such control was compelled by the State of Texas, not the Companies. Where regulatory requirements apply to work performed by employees and independent contractors alike (ROA.2798), they are not probative of the worker's status. *See Parrish*, 917 F.3d at 382; *Yoder I*, 2022 WL 1055184, at *5; *Oestman v. Nat'l Farmers Union Ins. Co.*, 958 F.2d 303, 306 (10th Cir. 1992) (retaining advertising approval is not indicative of an employee relationship).

### 3. Merritt controlled scheduling, recruiting, training, and staffing

Merritt controlled his schedule, which the district court correctly found indicates independent-contractor status. ROA.6314. He managed his agencies unsupervised.[109] He set his own hours,[110] needing no permission and having no limit

---

[109] ROA.2679-80 ¶21; ROA.2751 ¶11; ROA.3407-08; *see also* ROA.15253 (jury "heard testimony that none of Defendants supervised Plaintiff's daily tasks and work hours").

[110] ROA.2679, 2681, 2751; *see also* ROA.15245, 11472, 11475, 11498, 11504, 11539.

on time off, sick leave, or vacation time.[111] He did not have to track or report his hours.[112]

Unlike an employee, Merritt had significant control over personnel in his agencies, including recruiting.  ROA.2677-78.  Yet the court found such control unpersuasive merely because the Companies (which are mandated by TDI to ultimately contract and appoint the agents who sell their products) required potential agents to pass a background check, have a satisfactory credit score, and complete a sales aptitude test.  ROA.6314.  This finding ignored that Merritt controlled the meaningful aspects of recruiting and hiring.[113] *Yoder I*, 2022 WL 1055184 at *5 (evidence favored contractor status even though "Plaintiffs couldn't [unilaterally] hire agents to contract on Farm Bureau's behalf").

The court also discounted Merritt's control over the hiring,[114] firing and scheduling of his licensed insurance sales representatives ("ISRs") and secretaries.[115] He delegated significant tasks to his ISR, putting her in charge of all his new commercial business quotes, leaving Merritt free to focus his efforts on

---

[111] ROA.2679, 2751 *see also* 11678-79, 11799-803, 11856-57, 11541-43.

[112] ROA.2679, 2751; *see also* ROA.11505-06, 11539-41.

[113] ROA.14372, 14376.

[114] ROA.6313-15.

[115] ROA.2757, 14359.

building his lucrative life insurance business.[116]  Any sales generated from his ISR's

work earned Merritt commissions.[117]  Where "the record shows [ ] Plaintiffs hired

help at their discretion," it points to contractor status.  *Yoder I*, 2022 WL 1055184,

at *5.

### C.    Merritt Controlled His Opportunity For Profit Or Loss

The court erroneously found that the profit-loss factor favored employee

status because the Companies set commission rates, purportedly owned the policies,

and maintained exclusivity with Merritt.  ROA.6316-17.

But the evidence showed that, unlike the sales leaders in *Hopkins*, Merritt's

customer volume did not depend on leads controlled or provided by the Companies.

ROA.2681, 2751.  Merritt controlled the development of new, multi-line business.

ROA.2681, 2751, 1313; *Hickey*, 699 F.2d at 752 (because plaintiff "controlled the

determinants of customer volume," profit and loss factor favored contractor status).

He also controlled his expenses.[118]

Merritt's significant control over his profit and loss was evidenced in his

ability to earn commissions on every policy sold or renewed in his agencies,

---

[116] ROA.2756, 14385-86, 14420-21.

[117] ROA.14389.

[118] *See* ROA.13247, 13248, 13336-606 (Merritt's tax returns).

increasing his income and profit as the agencies' business increased.[119] Merritt earned $1.2 million on his initial $400,000 capital investment when he retired.[120] And unlike *Hopkins*, the Companies did not discourage or penalize sales of brokerage policies.[121]

Merritt's lack of ownership of his "book of business" (ROA.6315) is not determinative. *E.g.*, *Yoder I*, 2022 WL 1055184, at *5 (concluding lack of "ownership interest" did not "favor a conclusion [plaintiff]s were employees"). Only an insurance company—the entity assuming the insurable risk—can contract with an insured. ROA.2763-64. Courts do not typically hold this fundamental aspect of insurance sales against employers. *See Daskam v. Allstate Corp.*, 2012 WL 4420069, at *2 (W.D. Wash. Sept. 24, 2012) ("captive" agents controlled profit and loss because they "were able to amass large books of business" under business model); *Butts v. C.I.R.*, 1993 WL 410704, at *9 (T.C. Oct. 18, 1993), *aff'd*, 49 F.3d 713 (11th Cir. 1995) (similar under tax code).

This factor favors independent contractor status.

---

[119] ROA.2696-97, 2905.

[120] ROA.1301, 2833-34 ¶¶28-29.

[121] ROA.2685-89.

**D.    The Court Erred In Concluding That The Relative Investment Factor Favored Independent Contractor Status**

The court also improperly compared Merritt's sizable investment in his insurance sales business to the Companies' *company-wide* investments. ROA.6315-16.  But the relevant investment factor compares the amount the alleged employer and the worker contribute to the specific job and *not* the alleged employer's investment in its overall business.  *Carrell*, 998 F.2d at 332.

Merritt did not adduce the amount the Companies invested in his job.  But even a side-by-side comparison does not require a finding of employee status when a worker makes significant investments in his business.  *Parrish*, 917 F.3d at 383; *Gray v. Killick Group, LLC*, 113 F.4th 543, 552 (5th Cir. 2024).  Here, Merritt invested **hundreds of thousands of dollars** in his agencies, including purchasing his predecessor's book of business;[122] paying for rent, staff salaries, advertising, supplies, client entertainment expenses, tax and accounting fees, and vehicle and other expenses associated with running his own enterprise;[123] and spending between $30,000 – $50,000 a year in advertising.[124] Such amounts are "flatly inconsistent with any notion [he was a] mere employee." *Yoder I*, 2022 WL 1055184, at *8.

---

[122] ROA.2681, 2684, 2861, 14407, 14276.

[123] ROA.2863, 14278, 14398, 14400, 14404-05, 14484-14754.

[124] ROA.2863, 14278, 14398, 14400, 14404-05, 14484-754.

### E.    Merritt Was A Licensed Insurance Professional Whose Skill And Initiative Showed He Was An Independent Contractor

In analyzing the skill and initiative factor, the court again mechanically analogized Merritt's situation to *Hopkins* and *Ferguson*, concluding Merritt's skill set was managerial, not specialized.  ROA.6317-18.  In doing so, the court ignored the record, which showed Merritt was undisputedly a skilled and licensed professional, with extensive and specialized skills," which Merritt acknowledged. *See* ROA.1255-56, 1258-59, 1265-66, 1292-93, 1313-14, 2676, 2684-85.

Courts routinely find that licensure establishes special skills as a matter of law.  *See Yoder II*, 2023 WL 3151107, at *3; *Schwieger v. Farm Bureau Ins. Co. of Neb.*, 207 F.3d 480, 485 (8th Cir. 2000) (licensing, ethics requirements, and certification "heavily" favored independent contractor status under Title VII).  The court erred by not finding this factor favored independent-contractor status.

### F.    The Permanency And Integrality Factors Should Not Have Tipped The Balance To Employee Status

The court gave too much weight to the permanency factor.  ROA.6318-19. Merritt's relationship was not permanent.  *Parrish*, 917 F.3d at 387 ("Such a valuable skillset shows how the permanency of the relationship may, in reality, be not all that permanent.").  He was free to and did engage in other businesses while contracted as an agency manager, undermining any contention that he worked

exclusively for the Companies.[125] And, he could cancel his contracts on 10-day notice and continue to sell insurance with another insurer if he so chose.[126] *Parrish*, 917 F.3d at 381 ("whether the worker has a 'viable economic status that can be traded to other companies'" signifies independent-contractor status). A lengthy relationship does not equal economic dependence. *See, e.g.*, *Iontchev* v. *AAA Cab Serv., Inc.*, 685 F. App'x 548, 550-51 (9th Cir. 2017) (plaintiffs "were not economically dependent" on defendant though "[t]he working relationship was often lengthy").

The court should not have given any weight to an "integrality" factor. ROA.6319-20. In its most recent decision on employee status, this Court—citing *Hopkins* and *Parrish*—states five factors, not six, and integrality was not among them. *See Flores v. FS Blinds, L.L.C.*, 73 F.4th 356, 365 (5th Cir. 2023). That is the better course, because no business willingly engages inessential employees *or* independent contractors, and the economic realities test focuses on the worker's dependence, not the employer's.

---

[125] ROA.2679, 2756.

[126] *E.g.*, ROA.3165, 3178, 3191.

## <u>CONCLUSION</u>

For the reasons set forth above, the jury's verdict and the judgment of the district court should be affirmed.

In the alternative, in the event the Court declines to affirm the jury's verdict and judgment, the district court's denial of summary judgment in favor of the Companies on the issues raised in their cross-appeal should be reversed and vacated, and judgment should be entered for the Companies or the issues remanded for trial.

Dated:  April 2, 2025

/s/  *Barry A. Moscowitz*

BARRY A. MOSCOWITZ
bmoscowitz@thompsoncoe.com
CASSIE J. DALLAS
cdallas@thompsoncoe.com
LESLIE W. RICHARDSON
lwrichardson@thompsoncoe.com
THOMPSON, COE, COUSINS &
IRONS, L.L.P.
Plaza of the Americas,
Twenty-Fifth Floor
700 North Pearl Street
Dallas, Texas 75201
Telephone:  (214) 871-8200
Facsimile:  (214) 871-8209

*Counsel for Appellees/Cross Appellants*
*Texas Farm Bureau Business*
*Corporation, Texas Farm Bureau*
*Casualty Insurance Company, Texas*
*Farm Bureau Mutual Insurance*
*Company, Texas Farm Bureau*
*Underwriters, Farm Bureau County*
*Mutual Insurance Company*
*and Texas Farm Bureau*

Respectfully submitted,

/s /  *Markham R. Leventhal*

MARKHAM R. LEVENTHAL
mleventhal@carltonfields.com
SCOTT ABELES
sabeles@carltonfields.com
CARLTON FIELDS, P.A.
Suite 400 West
1025 Thomas Jefferson Street, NW
Washington, DC 20007
Telephone: (202) 965-8189
Facsimile: (202) 965-8104

IRMA REBOSO SOLARES
isolares@carltonfields.com
STEPHANIE A. FICHERA
sfichera@carltonfields.com
CARLTON FIELDS, P.A.
2 MiamiCentral, Suite 1200
700 NW 1st Avenue
Miami, Florida 33136-4118
Telephone: (305) 530-0050
Facsimile: (305) 530-0055

CATHLEEN BELL BREMMER
cbell@carltonfields.com
CARLTON FIELDS, P.A.
Suite 1000
4221 West Boy Scout Boulevard
Tampa, Florida 33607-5780
Telephone: (813) 223-7000
Facsimile: (813) 229-4133

*Counsel for Appellee/Cross Appellant*
*Southern Farm Bureau Life Insurance*
*Company*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 2nd day of April, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which caused a copy to be served upon all counsel of record.

*/s/  Markham R. Leventhal*

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 15,089 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

*/s/  Markham R. Leventhal*

138651919